241 P.2d 794

VINSON v. INDUSTRIAL COMMIS-
SION et al.
No. 5541.

Supreme Court of Arizona.
March 17, 1952.

Charlie W. Clark and Ed. Brash, of Phoenix, for petitioner.

Robert E. Yount, of Phoenix, (Robert W. Pickrell, Phoenix, of counsel), for respondent, Industrial Commission of Arizona.

DE CONCINI, Justice.

This case is before us on certiorari to review an award of the Industrial Commission.

Petitioner, W. E. Vinson was injured on October 30, 1947 by an accident arising out of and in the course of his employment. The employer, Ed Bridgeman (Bridgeman Construction Company), was insured with the respondent commission. At the time of his injury, Vinson was 35 years of age, in good health, with no previous disability, and was earning a salary of $306.25 per month as a truck driver.

The medical records establish that as a result of the accident he suffered a "ruptured lumbar intervertebral disc". Two operations were subsequently performed on the petitioner's spine. The first was in April, 1948 and the second the following year on July 9, 1949. Both operations were for the purpose of making bone grafts and spinal fusions. After the second operation, Dr. M. R. Richter reported, on September 28, 1949, that there was a "well fused third, fourth and fifth and upper sacral segment anatomically aligned in the A. P. and lateral projections."

The patient continued with visits to various doctors, until on August 8, 1950, the commission received the following recommendation from Dr. William B. McGrath, who had given petitioner a neuropsychiatric consultation:

"Comment: This man lives alone and is not very intelligent. He has accepted the minor discomforts which are still residual to his operation in a passive fashion and has unconsciously perhaps employed them as his reason for continuing in a dependent and peacefully parasitic existence. He has lost any obvious intention of resuming wage earning and we feel that he would be perfectly content to continue in his present situation for the rest of his life. *Actually there is in the physical and neurologic examination not very much evidence of disability at this time. He shows no weakness nor atrophy nor more than 20% restriction in the use of the back and of the lower extremities.*

"We do not feel that his grade of intelligence and its accompanying emotional reaction would make him a candidate for ordinary psychiatric treatment of the neurotic passivity. *We do feel that he should very soon be rated from the orthopedic standpoint and that it will require coercion to get him back to light work for a period of a month or two, until he can have rehabilitated himself from the muscular standpoint and reaccustomed himself to exertion.* Diagnosis: Physical disability with regard to the lower back, amounting to approximately 20% and stationary. Functional loss of tolerance for discomfort and exertion, amounting to the remaining part of his condition which has kept him from returning to the light work for which we feel he is at this time able." (Emphasis supplied.)

Drs. Williamson and Tuveson concurred in the above diagnosis, saying: " * * * we are in full accord with the comments of Dr. Wm. B. McGrath in his examination and report of Aug. 8, 1950. The results of his consultation were made known to Mr. Vinson at his last office visit a few days ago and at that time he was informed that he would be released to some form of light work after the first of September 1950. *In the meantime, he is to become more active and is to expect some pain and disability in his back while getting in shape to return to some form of gainful occupation.*" (Emphasis supplied.)

Accordingly, the commission on October 6, 1950 entered an order directing petitioner to obtain light work of such a nature as he could perform. Petitioner started work as a bartender and during the period from September 29, 1950 through April 13, 1951 averaged $70.96 a month.

At a hearing on March 5, 1951 he stated that he could have a full time job of five days per week if his back would permit, but that the "work is just too heavy" and that after standing several hours "my back is just gone". He received $9.00 for each full shift of work. Earlier in 1950, Vinson made an attempt to return to work for Bridgeman, but at that time was unable to do his work without pain and discomfort.

He attempted to do his work for a week and received no compensation.

On April 20, 1951 the commission entered its Findings and Award for Unscheduled Permanent Partial Disability under the provisions of section 56–957(c) and (d), A.C.A.1939.

The Findings provided:

"8. That evidence before the Commission indicates that said applicant is physically able to perform light work of such nature as would provide him with some income, if such work were available to him; evidence further indicates that as a result of the partial permanent disability sustained by the applicant, there had resulted a 30% loss of earning capacity, and entitles said applicant to the sum of $50.53 monthly of which $156.35 has been paid, leaving a payment of $49.87 monthly until further order of the Commission.

"9. That in determining the percentage of loss of earnings of said applicant, this Commission has considered among other things, and finds

"(a) That the employee had no previous disability of record;

"(b) That the occupation of the employee at the time of said accident was that of a truck driver;

"(c) That the physical injury caused by said accident was injury to the back;

"(d) That the age of the employee at the time of the injury was 35 years;

"(e) That the employee had a 20% general physical functional disability resulting from said accident."

The award made was in line with the above findings. Petitioner made a timely application for rehearing before the commission but was refused such a review.

 Assignment of error one attacks that portion of Finding No. 8 wherein the commission found "That evidence before the Commission indicates that said applicant is physically able to perform light work of such nature as would provide him with some income if such work were available to him."

As we have often said, if there is any reasonable evidence in the record to support the commission's findings they are binding on this court. The medical record establishes that all of the doctors who examined petitioner were of the opinion that his physical condition would permit his return to light work and that it would probably be necessary to force himself to start building his bodily strength. It was recognized by these doctors that certain pain and discomfort would accompany this reconditioning of the muscles, since Vinson had done no work for over two years and had undergone major surgery twice. The above quoted portion of the finding is therefore supported by reasonable evidence. Assignment No. 3 is repetitious and is governed by the foregoing.

 The remaining assignments are here treated together. Petitioner contends

that the *actual* loss of earning capacity is 66.01% or $202.15 per month. This represents the difference between his salary as a relief bartender and that wage he previously made as a truck driver. The petitioner's contention that he is entitled to recover such percentage finds no support in the Workmen's Compensation Law.

Section 56–956(b) provides:

"For total disability adjudged to be permanent, compensation of sixty-five [65] per cent of the average monthly wage shall be paid during the life of the injured person."

and section 56–957(c) provides for permanent partial disability. Under this "odd-lot" section, the maximum that a workman can recover monthly is 55% of the difference between his wage prior to injury and the *amount he is able to earn thereafter*. The rule has also become well recognized that under this latter section, the phrase "able to earn thereafter" does not always mean the wage he is actually receiving after the injury, since in fixing compensation, the commission may consider the factors listed under subsection (d) of 56–957.

It is petitioner's contention that he is totally permanently disabled, and hence would be governed by 56–956, supra. His only basis for this is that when he stands for any period of time, his back pains him and that he is unable to do any lifting. There is no medical testimony other than that quoted, as to petitioner's injury.

There is nothing to contradict the statements of the various doctors that after petitioner has readjusted his muscles and body he will be able to work without pain and discomfort. The longest period worked by petitioner was two weeks, and he quit then, not because he was advised to do so by a doctor but because of the pain he suffered.

Petitioner cites numerous cases interpretating the workmen's compensation laws of other states, that an injured employee will not be penalized when he attempts to do trifling odd jobs in order to receive additional money. Other cases hold that injured workmen will not be forced to return to work where such work causes intense pain and may further injure his health. These humane interpretations of the law are wise, but unfortunately the medical testimony in the instant case prevents petitioner from placing himself in a situation where such a rule would benefit him.

The last point to be considered is whether the award of 30% loss of earning capacity finds any support in the record. In the late case of Eaves v. Industrial Commission, 73 Ariz. 78, 237 P.2d 809, we set aside the award made by the commission since the facts in support of the factors under subsection (d) of 56–957 would not sustain the commission's action in awarding compensation in an amount less than 55% of the difference between what the applicant was earning prior to

the injuries and the wage he was actually earning thereafter.

In making the award to Vinson of $50.53 monthly, the commission in effect found that he was "able to earn" $214.38 monthly. In its findings, the commission also correlates the factors found in subsection (d) with the circumstances of this case. No doubt there is a general lack of knowledge as to the mathematical manner in which the commission arrives at the monetary amount of its award. Using the facts of this case, it appears that the commission reaches the figure of $50.53 in this way:

$306.25 Wage earned prior to injury.

x30% Loss of earning capacity attributed to injury. (% of disability)

$ 91.87

x55% Statutory percentage provided for permanent partial disability cases.

$ 50.53 Amount of award to petitioner.

Following the decision of Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612, the commission would be justified under the evidence in this case to conclude that as soon as petitioner became readjusted to physical labor he would be able to perform the duties of a full time bartender, even though he has not reached that stage. At the time of the commission's order he was earning only $70.96 per month, yet the medical evidence supports the conclusion that petitioner could earn $9 per day, 22 work days per month or $198. Therefore his loss of earnings would be 55% of the difference between his salary at the time of injury and what the commission *would be justified in finding his present ability to earn.*

It is only by viewing the evidence most favorable to sustaining the award that it can be found that the commission would be justified in finding that petitioner was able to work as a full time bartender. There is no evidence in the record as to any other work the petitioner might be capable of doing.

There is small difference between the 30% loss of earning capacity as found by the commission and that percentage which would be proper. However, the petitioner is entitled to that difference. Eaves v. Industrial Commission, supra.

Award Set Aside.

STANFORD, PHELPS and LA PRADE, JJ., concur.

UDALL, Chief Justice (dissenting).

I am of the opinion that the award in the instant case should be affirmed for the identical reasons advanced in my dissent in the Eaves case, supra. As I view it the majority opinion again denies the Commission the right to evaluate the "imponderable factors" and in effect requires that the award be predicated *solely* on the difference between the wages earned prior to the injury and the amount the petitioner can now earn as a bartender. In reviewing awards made under the workmen's com-

362

pensation law this court I believe should confine itself to declaring the controlling legal principles and not deny the Commission the right of "approximation". As indicative of how technical the court is becoming, inthe Eaves case it was held that the percentage of loss of earning capacity was not 20% but 23.6%, whereas in the instant case the court is in effect saying to the Commission, you again miscalculated the petitioner's loss, it was not 30% but rather 35.347%, hence he is entitled to $9.01 per month more. In my opinion these decisions will result in an increasing number of appeals in workmen's compensation cases.