309 P.2d 237

Ray H. LARAMORE, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, and San Xavier Rock and Sand Company, Defendant-Employer, Respondents.

No. 6334.

Supreme Court of Arizona.

April 2, 1957.

R. Franks, Donald J. Morgan, Phoenix, and James D. Lester, Tucson, of counsel.

PHELPS, Justice.

Petitioner Ray. L. Laramore, by certiorari, has brought before us for review, an award of the Industrial Commission asking that the award, granting him only nominal compensation, be set aside on the grounds that the commission erred: first, in making findings not based upon reasonable and substantial evidence; second, in refusing to consider new and additional evidence.

Petitioner, a man aged 40 years, was employed in Tucson as a welder for the San Xavier Rock and Sand Company. The employer was insured under a policy issued by the commission. On July 19, 1954, while engaged in his occupation as a welder, a truck backed into him, striking him at the base of the skull and knocking him down. His injury was diagnosed by Dr. Juan Fonseca, a neurosurgeon, as a "typical case of a cervical brachial syndrome." Dr. Ian Chesser, petitioner's attending physician, testified that this was an injury to the cervical spine rather than the head itself, due to a violent moving of the head on its vertical axis. He further stated that this type of injury manifests itself by changes in the nerve supply to the arm because the origin of the nerve supply to the arm is in the neck. He said the whip lash type injury damaged petitioner's fifth and sixth cervical vertebra causing him to have a

Ira Schneier, Tucson, for petitioner.

Robert K. Park, Phoenix, for respondent Industrial Commission of Arizona, John

"severe spasm of his cervical muscles" in his right arm whenever he put forth any muscular effort, such as lifting, stretching or working with his head turned to an acute degree. A muscle spasm was described as a full contraction of a muscle due to reflexes which cuts off the blood supply and causes pain. In addition, petitioner suffered headaches from time to time for which traction was prescribed. Doctors Elkins, Schwartzmann and Chesser, by written report, concluded that as a result of his injury the petitioner "sustained a ten per cent general physical functional disability permanent in nature."

On November 23, 1955, the commission, without a formal hearing, entered findings and award for an unscheduled permanent partial disability not to exceed ten per cent. The commission found that petitioner had not sustained any loss of earning capacity as a result of the accident and that petitioner's average monthly wage, prior to injury was the sum of $484, and that his average monthly post-injury wage was $512.51 from July 1, 1955 to September 23, 1955.

Petitioner then filed an application for rehearing alleging that his post-injury wages were not truly indicative of his earning capacity and that his functional disability actually has affected his earning capacity. On February 9, 1956, the first formal hearing was held in Tucson. At that time petitioner testified that he was a skilled certified welder and that after his injury he had tried various jobs, such as (1) welding rock crusher rolls, (2) operating a concerate sawing machine, (3) operating an electrical hoist for a chimney building outfit, (4) welding thin walled airtight joints (with the aid of an extra helper) and (5) sheet metal welding and installing siding on metal buildings. Petitioner further testified that he was forced to discontinue the concrete sawing machine work and welding jobs because of what the Doctors described as an exacerbation of his symptoms and signs present shortly after the injury. Petitioner further testified that at the time of the hearing he was doing brazing or acetylene welding, with a gas torch, in an assembly operation for $1.39 per hour; that he could probably do the work but that he would have to take time off for traction. In each case he was forced to quit his job and take traction for relief except when employed on the push-button electrically operated hoist which required no exertion at all.

Mr. Lee Renick, a representative of the International Union of Operating Engineers, testified that there is no such classification as a "light duty welder" in the industry; that operating a concrete sawing machine required a good strong arm to crank the machine and that the rock crusher job required heavy duty welding.

Granville Bailey, a sheet metal worker for Davies Air Conditioning Co., testified that he was the lead man on the airtight joint welding job; that petitioner and he did all heavy lifting connected with the job until petitioner suffered a recurrence of his symptoms approximately one week after he began work; that the job required exceptional skill which petitioner possessed and the employer could not procure another expert welder; that in order to keep petitioner on the job he was given an extra mechanic to relieve him from climbing and lifting, and to place and hold the pipe conveniently before him in proper position for welding; that the airtight joint type work of welding thin pipe was an "unusual job" of welding that only arises every four or five years in the Tucson area.

On March 27, 1956, as a result of the first hearing, the commission amended its findings and award and petitioner was awarded compensation of $26.62 monthly. Findings No. 12 and 13 thereof read as follows:

"12. This Commission finds that applicant is physically and mentally able to perform duties similar to those applicant performed prior to his injury providing applicant avoids duties requiring strenuous physical exertion for which applicant might reasonably expect to earn the sum of $435.60 monthly.

"13. This Commission finds that applicant has sustained a 10% loss of earning capacity and is thereby entitled to an Award for Unscheduled Permanent Partial Disability under Section 56–957(c) and (d), Arizona Code Annotated 1939, as amended (A.R.S. 23–1044s (c) and (d), entitling applicant to the sum of $26.62 monthly until further order of this Commission."

The pertinent part of finding 14 is quoted below as follows:

"14. That in determining that applicant has sustained 10% loss of earning capacity, this Commission has taken into consideration, in addition to the above listed items, the following:

* * * * * *

(f) That applicant had been employed as a concrete sawing machine operator, hoist operator, welder and sheet metal worker since his injury."

On April 9, 1956 the petitioner filed an application for rehearing on the grounds that the above findings were not supported by the evidence and that they were contrary to all the evidence in the record. In addition, petitioner asserted that the evidence showed that the assembly operation work at $1.39 per hour, was the only truly indicative evidence of his present earning capacity. He further asserted that his oth-

er employment since injury, consisting of blow pipe welding for Davies Air Conditioning Co., and the operation of an electrical hoist for Custodis Construction Company, operated by means of a push-button system, were "unusual" in nature and not normally available in the Tucson area. Petitioner then concluded his application as follows:

"Applicant wishes to introduce new or additional evidence to show his average monthly wage prior to the injury was higher than set forth in finding (5), [$484.00] or approximately $600 per month. Said additional earnings had been overlooked by applicant because of his physical injuries and mental condition."

 Evidence was introduced in support of petitioner's claim that he had a valid excuse for not requesting, in his earlier petition for rehearing, an opportunity to present this new evidence relating to his mental condition resulting from his injury. It is our view that the commission was justified in declining to consider this evidence, first, upon the ground that the evidence did not support petitioner's claim as a ground for excuse, and secondly, upon the ground that petitioner's failure to incorporate this request in his petition for rehearing following the findings and award of November 23, 1955, constituted a waiver under the provisions of the commission's Rule 38(b) of his right to later do so. Therefore, the action of the commission may not now be questioned by the petitioner.

A second formal hearing was held May 22, 1956, pursuant to this second application for rehearing. Petitioner then testified that he was forced to leave his employment of assembly operation brazing at $1.39 per hour, and which could then be done sitting down, because he was thereafter transferred by his employer to an operation requiring him to work in a standing position welding heavier parts weighing 12 to 15 pounds and which required him to reach over 12 to 18 inches with his arms extending up to a 45 degree angle, whereas the original assembly job did not require any reaching and the articles welded weighed only about three quarters of a pound. This caused him to have muscular spasms with which he has been bothered since the accident. He further testified that he was presently employed by the AWECO Supply Company doing counter sales work for $250 per month, and that he was not required to use any physical effort in this new sedentary type employment, such as is involved in welding. This constitutes a slight increase in earnings over the assembly line job and which petitioner testified he could perform.

At this hearing Dr. Ian Chesser testified that the petitioner would make slow progress in his recovery and that he would be

subject to recurrences of the headaches and muscle spasms over a period of many years. He concluded that petitioner, because of his injury, would be better suited to some sedentary type of employment. There is no evidence to the contrary on either of these matters.

On August 6, 1956, following the second hearing, the commission issued its order affirming the previous decision upon rehearing and the amended findings and award of March 27, 1956. The commission then ordered "that applicant take nothing by reason of his last petition for rehearing nor by reason of rehearing held."

■ Petitioner objects to findings Nos. 12, 13, 14 and the award of March 27, 1956 (as affirmed by the commission's order on August 6, 1956) on the grounds that they are not based on reasonable or substantial evidence. It is fundamental law that the findings and award of the commission must be supported by the evidence.

■■ Finding No. 12, supra, found petitioner was physically and mentally able to perform duties similar to the work of heavy welding which he had done prior to his injury, with the modification that the petitioner would have to avoid work requiring "strenuous physical exertion".

What the commission is saying, under these circumstances and the facts of this case, is that the petitioner can do heavy duty welding if he doesn't exert himself by doing heavy duty welding. Obviously such a finding is not consistent nor logical. The evidence is undisputed that there is no such work classification as "light duty welding" in the welding industry. To find that petitioner may resume his prior work and reasonably be expected to earn $435.60 monthly, without evidence to support such a finding, is error. We hold that there is no evidence in the record that the petitioner is able to continue his prior occupation of heavy duty welding. The proviso in finding No. 12 recognizes this fact by stating that in order to do heavy duty welding petitioner must avoid "strenuous physical exertion", when all of the evidence is to the effect that welding always involves heavy duty work.

The commission, in finding No. 13, found that petitioner

"* * * has sustained a 10% loss of earning capacity and is therefore entitled to an Award for Unscheduled Permanent Partial Disability * * * entitling applicant to the sum of $26.62 monthly until further order of this Commission."

That part of finding No. 13 which determined that petitioner sustained a 10% loss of earning power is erroneous, because it is based upon finding No. 14(f) in which the commission accepted at face value and without reservation, petitioner's employ-

ment and wages received since his injury, as the measure of his earning capacity (1) as a concrete sawing machine operator, (2) hoist operator, (3) welder and sheet metal worker. With the exception of the job as hoist operator, which required no exertion at all, the undisputed evidence clearly shows petitioner was unable to carry on the work because of his physical condition, and that he suffered muscular spasms and headaches as a result of his efforts. The determination, therefore, of a 10% earning loss could not be properly based wholly upon these jobs.

As we have pointed out above, the evidence is undisputed that petitioner was unable to do the heavy work connected with the concrete sawing machine job. He could not crank the engine which was necessary to start it, nor could he do the heavy duty welding or the lifting, climbing, etc., connected therewith. He only worked 3 days on the concrete sawing machine job, 4 days on the job welding rock crushing rolls, and had to resort to traction to relieve muscular spasms. And on the sheet metal welding job, consisting of welding joints in blow pipe, which must be airtight and water tight at the joints, and requires the skill of an expert, petitioner worked for approximately one week and notified the employer he could not do the heavy work connected with it and asked to be relieved. Instead, the employer furnished him an extra me-

chanic to carry all the material, move all scaffolding, and rigging of scaffolding and lowered the pipe and floor in the building where it was put in place and held there for petitioner to weld. The only effort required of petitioner with this aid, was to hold the torch. Even with this help he finally had to quit because of his physical condition. This was testified to by the witness Bailey. Both the hoist job and the blow pipe welding job are "unusual" in the Tucson area and do not come up more than once in four or five years.

Since the only job that could have been used then as a basis for petitioner's post-injury wages was the $1.39 per hour assembly operation, the commission obviously failed to make a realistic finding under the evidence. This is especially true because the evidence of the subsequent formal hearing of May 22nd disclosed that petitioner was even unable to continue the assembly operation after being transferred to a heavier type project. We therefore hold that findings No. 12, 13 and 14 are not supported by the evidence, in that the wages received after petitioner's injury and used by the commission as a basis for his post-injury wages, were, as hereinabove pointed out, conclusively shown to not be a fair test of his post-injury earning capacity. The award must therefore be set aside as unrealistic and not supported by the facts of this case. See, White v. Industrial Com-

mission, 82 Ariz. 120, 309 P.2d 250, and Larson's Workmen's Compensation Law, Vol. 2, Sec. 57.21.

Award set aside.

UDALL, C. J., and STRUCKMEYER, WINDES and LA PRADE, JJ., concur.