347 P.2d 710

Charles W. ALLEN, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona
and Baum & Adamson Tire & Automo-
tive Service, Respondents.

No. 6753.

Supreme Court of Arizona.

Dec. 16, 1959.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for petitioner.

John R. Franks, Phoenix, Donald J. Morgan, James D. Lester, Frances M. Long and Edward E. Davis, Phoenix, of counsel, for respondent Industrial Commission.

BERNSTEIN, Justice.

In this certiorari proceeding to review the final award of The Industrial Commission of Arizona (hereinafter called the "Commission"), petitioner does not dispute the award of temporary benefits but claims that he is entitled to a permanent award in the statutory amount scheduled for his injuries, and, in addition, to an award based on his loss of earnings to the extent such loss exceeds the scheduled compensation. The Commission contends that decisions of this Court foreclose it from awarding petitioner the scheduled sums and that petitioner has not suffered any loss of earning capacity.

On June 1, 1956, petitioner was employed by Baum & Adamson Tire & Automotive Service as a service salesman. At that time he was 36 years old and had been employed by that company for about nine years. His duties consisted primarily of making scheduled calls on commercial accounts to sell tires, other equipment and services, and, at times, to change tires on automobiles or trucks belonging to customers.

The accident occurred when petitioner was inflating a tire in the process of mounting it on a trailer of a customer. The tire blew up and split the wheel, fracturing his right hand and injuring his right eye. Petitioner thereafter underwent medical treatment until February 12, 1958, at which time his condition was found to be stationary.

At that time petitioner's right eye had been enucleated. He also sustained a 30% permanent partial functional disability of his right or major hand which had three particular results: his grip was weaker and more limited (it was estimated that the grip of his right hand was 35 to 40 pounds less than before the accident); his fingers were deformed and snapped when in use; and the dexterity of his fingers was reduced as the result of limitation of motion in his finger and knuckle joints.

Petitioner returned to work on a part time basis in August 1956 performing light office work and some selling. Since the spring of 1958 petitioner has been working full time, at his previous salary, performing substantially the same duties as before the accident but changing fewer tires. Peti-

tioner testified that, mainly because of the loss of his eye, which affected his depth perception, he was unable to do his work as efficiently as before. The doctor and petitioner's employer testified at the Commission hearing that petitioner could do the same work but not as well, as easily, as quickly or to the same degree as before the accident.

The employer stated that in his opinion petitioner's injury affected his future with the company with respect to raises or promotions and that but for the accident petitioner would by August 1958 have been earning $100 more per month than his then salary. The employer further testified that in his view petitioner would have little or no chance to be employed by other similar companies, that his own company would in fact not hire a man in the condition of petitioner, and that although the employer had lost something financially as far as petitioner was concerned, it was the company's policy to keep disabled workers on the job at the same pay.

The Commission found that petitioner's injuries resulted from an accident occurring on June 1, 1956, which arose out of and in the course of his employment, that his physical condition became stationary on February 12, 1958, and that because petitioner sustained multiple scheduled injuries, compensation had to be awarded, pursuant to A.R.S. § 23–1044, subd. C, as if such injuries were unscheduled. The Commission further found

"10. That said applicant returned to work for the above-named defendant employer at the same rate of pay as that received prior to said injury by accident of June 1, 1956, so, therefore said applicant is suffering no loss of earning capacity attributable to said accident.

"11. That in determining that applicant has no reduced monthly earning capacity as a result of his injury by accident, this Commission has given full consideration to applicant's present earning capacity, age, education, physical condition, previous work history, the nature of his injuries, his work history subsequent to said accident, and full consideration to all other facts and circumstances pertaining to the case."

Under our workmen's compensation statute (A.R.S. Title 23, Chapter 6), an employee is entitled to temporary compensation for injuries arising out of his employment so long as his condition is not stationary. When his condition becomes stationary and the disability suffered is classified as permanent, the employee is entitled to benefits dependent on whether the permanent disability is deemed total or partial.

A permanent total disability is compensated at 65% of the average monthly wages, paid during the lifetime of the injured em-

ployee, A.R.S. § 23–1045, subd. B. Certain disabilities are deemed total and permanent, in the absence of proof to the contrary; such as, loss of sight of both eyes, loss or paralysis of both feet or hands or the combination thereof, and skull injuries resulting in incurable imbecility or insanity (A.R.S. § 23–1045, subd. C). A.R.S. § 23–1045, subd. D provides:

"The enumeration in this section is not exclusive, and in all other cases permanent total disability shall be determined in accordance with the facts."

A permanent disability which is partial is compensated on the basis of 55% of the average monthly wage of the injured employee in accordance with two distinct tests. A.R.S. § 23–1044, subd. B specifies certain injuries which are deemed to result in permanent partial disability and entitle the employee, without more, to 55% of his average monthly wage for a specified number of months. These injuries, referred to as "scheduled", include loss of fingers, toes, hand, arm, foot, leg, eyesight and hearing. Partial loss of use is compensated at 50% of the average monthly wage for a number of months proportionate to the extent of the loss. Permanent disfigurement of the head or face may be compensated in a sum to be fixed by the Commission for a period up to 18 months.

Subsection C of A.R.S. § 23–1044 provides that permanent partial disability for work caused by injuries not enumerated in subsection B are to be compensated at 55% of the difference between the employee's

"average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability,"

with such compensation to cease when the disability ends or the employee dies.

In determining the reduced monthly earning capacity, the Commission is to consider, "among other things", the employee's previous disability, his occupational history, the nature and extent of his physical disability, the type of work he is able to perform, wages received for work performed subsequent to the injury, and his age at the time of the injury. A.R.S. § 23–1044, subd. D. Where there is a previous disability, the percentage thereof at the time of the subsequent injury is deducted from the total disability to determine the percentage for the subsequent injury (A.R.S. § 23–1044, subd. E).

Pursuant to A.R.S. § 23–1044, subd. F, added in 1953 (Laws 1953, chapter 55), compensation for the above "unscheduled" injuries shall be determined "not later than nine months from the time the physical condition of the injured employee becomes stationary" and may be changed,

"only in the event of a subsequent change in the physical condition of the

injured employee resulting from the injury and affecting his earning capacity."

The purport of these provisions is clear. When faced with a permanent injury, the Commission must first ascertain whether the resulting disability is total either because the injury is specifically enumerated in section 23–1045, subd. C or because it is determined to be so "in accordance with the facts" (A.R.S. § 23–1045, subd. D). If neither of the above conditions is satisfied, the Commission must determine whether the permanent partial disability was caused by any of the injuries scheduled in section 23–1044, subd. B, and, if so, must award compensation accordingly. It is only when the injury cannot be classified in any of the foregoing categories that the Commission has the task of determining loss of earning capacity under subsections C and D of section 23–1044.

The above enumeration makes it perfectly clear that any injuries which are specifically scheduled in any of these categories must receive compensation in the amount and for the period directed by the statutes. Nor is there anything that appears in any of the sections to indicate that an employee who receives more than one injury is, in some manner, deprived of the compensation to which he would be entitled if he suffered only one injury. On the contrary, par. 7 of section 23–1044, subd. B contemplates the addition of multiple injuries by stipulating that the compensation awarded "for more than one finger" shall not exceed the amount provided for the loss of a hand.

We recognize that some courts in other states (see 2 Schneider's Workmen's Compensation, § 2318) and, indeed, some of our own decisions, discussed below, have treated multiple injuries, even if scheduled, as if they were unscheduled. The underlying purpose of such result seems clearly to be to benefit the employee. Thus, in most instances, the cumulative effect of two or more injuries, though scheduled, may be greater than the arithmetical sum of the effects of each separate injury. We are hardly disposed to criticize such a reasonable rule. We note that in certain particular cases our statute does, in effect, award the sum of the particular injuries, plus more. For example, loss of hearing in one ear entitles the employee to 20 months' compensation; loss in both ears, to 60 months'. The enumeration of certain particular instances, however, does not imply a general rule to be applied to cases not so enumerated.

There is a further difficulty inherent in our statute in attempting to fashion an award greater than the sum allocable to the separate injuries. Awards for scheduled and unscheduled injuries have different bases: scheduled injuries entitle the employee to 55% of his average monthly wage for a certain number of months, and

no more; an award for unscheduled injuries is based on 55% of the loss in earning capacity, if any, for life. To attempt to compare or add the two is, without more, as meaningless as attempting to add the proverbial apples and oranges. Our statute, however, has not established criteria to relate the two different standards.

We next proceed to review the decisions of this Court in the light of these problems.

One of the earliest cases dealing with multiple injuries was Ujevich v. Inspiration Consolidated Copper Co., 1933, 42 Ariz. 276, 25 P.2d 273. There the employee sustained three distinct injuries as the result of an industrial accident: fractures of his right leg, left leg and left hip-bone. The Commission awarded temporary compensation, which was not disputed by the employee, and also compensation for permanent partial disability for 17½ months, without making specific findings to classify the separate permanent injuries. The Court held that the injury to the right leg was only temporary and remanded to the Commission to ascertain the percentage of loss to the left leg in order to determine the applicable award. The Court rejected the employee's claim that he was entitled to an award based on loss of earning capacity, under the subsection dealing with unscheduled injuries, and stated that the scheduled award (in addition to the temporary award) was

"all the compensation petitioner can be paid for the injury to his legs." 42 Ariz. at page 281, 25 P.2d at page 275.

The purpose of the scheduled awards was described as follows:

"The Legislature selected certain kinds of injuries or losses that employees suffer and fixed a definite sum or rule for ascertaining that sum and said, in effect, such sum together with the temporary total disability compensation shall be in full satisfaction of the employee's loss. It provided compensation for such loss whether any permanent disability to earn wages followed or not. It assumed that every loss enumerated would cause some permanent loss of earning power, and arbitrarily fixed the compensation therefor. While the application of this rule may in some instances compensate the employee more than he has been disabled, in others he doubtless will receive less than his ability has been depreciated by reason of the accident." 42 Ariz. at page 280, 25 P.2d at page 275.

The Court further stated that the injury to the hip-bone was "in addition to the injury to both of his legs" (42 Ariz. at page 281, 25 P.2d at page 275) and was not scheduled. The Court then added:

"If, as a matter of fact, such injury contributed in any way to the disablement of the petitioner to work, he should be compensated therefor under (w) of said subdivision (C); such compensation to be calculated according to the formula in (w)." 42 Ariz. at page 282, 25 P.2d at page 275.

Thus, the Court treated the unscheduled hip-bone injury as separate from, and compensable in addition to, the scheduled award for the leg injury, if the hip-bone injury "contributed in any way to the disablement of the petitioner to work."

In Ossic v. Verde Central Mines, 1935, 46 Ariz. 176, 49 P.2d 396, the employee lost the use of his left eye, suffered facial disfigurement, and sustained additional unscheduled injuries. The Commission found that the employee's condition was stationary (which the Court affirmed) and awarded him scheduled compensation for the eye and the disfigurement, and in addition awarded permanent partial disability equivalent to 15% of total permanent disability for the other unscheduled injuries. The employee urged that his disability, if permanent, was total, and, if held to be partial, was not properly computed by the Commission.

The Court disagreed with the procedure adopted by the Commission; namely, to add the separate scheduled injuries and then, disregarding these injuries, to compute the percentage of disability based on the unscheduled injuries. The Court held that the Commission

"* * * should rather have computed the total percentage of disability as it existed as the result of all the separate injuries, and based its award upon that status. Whether so computed the award would have been in total amount greater or less than that which petitioner actually received, would depend upon what the evidence shows the total percentage of his disability amounts to." 46 Ariz. at page 190, 49 P.2d at page 402.

The Ossic case holds, among other things, that the employee was entitled to have all of his injuries considered "in accordance with the facts" (1928 Revised Code of Arizona, § 1438(B); A.R.S. § 23–1045, subd. D), to determine whether his disability was total and permanent. We approve the rationale of the Ossic case in appraising the cumulative effect of all of the injuries.

In both Williams v. Industrial Commission of Arizona, 1951, 73 Ariz. 57, 237 P.2d 471 and Engle v. Industrial Commission, 1954, 77 Ariz. 202, 269 P.2d 604, the employee sustained multiple scheduled injuries. In each case the Commission treated the injuries as unscheduled and made an award based solely on the resulting loss of earning capacity. In Williams, the Com-

mission found a 20% loss of earning capacity; in Engle, none. In each case the employee claimed that he was entitled to the sum of the statutory awards for each of the scheduled injuries and, *in addition*, to an award based on loss of earnings as if the injuries, or any of them, were unscheduled. The Court in each case, relying on the Ujevich and Ossic cases, supra, rejected the employee's claim for an award based upon the scheduled injuries plus loss of earning capacity and upheld the Commission treatment of both injuries as unscheduled.

We agree with the rejection in these cases of the claim for compensation based on loss of earning capacity, in addition to the amounts separately scheduled, but we do not agree that the Ujevich and Ossic cases require a holding which results in an employee receiving, in effect, less than prescribed by statute. In Ujevich, the Court directed the Commission to ascertain the percentage of loss of use of the leg of the employee there in order that the precise amount of the scheduled award might be determined; and, in addition, directed the Commission to determine the disability resulting from the unscheduled injury to the hip. In Ossic, the employee also suffered unscheduled injuries in addition to scheduled injuries and the Court there directed the Commission to determine first whether, as claimed by the employee, permanent total disability resulted. If only

permanent partial disability resulted, the Commission was directed to ascertain the total percentage of disability as the result of all the separate injuries. The Court was attempting to resolve the problem created by the presence of additional injuries of an unscheduled nature.

It is of particular note that the Court in neither the Williams nor the Engle cases specifically reviewed the finding of the Commission on loss of earning capacity. It held only that a petitioner suffering multiple scheduled injuries cannot receive the scheduled amounts plus an award based on loss of earnings, if any, but must be compensated on the basis of unscheduled injuries.

Although we recognize that the contrary rule which awards an employee the sum allocable to his scheduled injuries, either as the exclusive award or as a minimum, has considerable merit, we are not disposed to overrule decisions of this Court which permit the Commission to determine its award upon the basis of the particular circumstances appropriate to each employee. Such determination by the Commission should not, however, ignore completely the legislative intent expressed in other subdivisions of the same statutory sections.

■ On its face the determination of the Commission that petitioner suffered no loss of earning capacity and consequently is entitled to no permanent compensation is

manifestly unjust. It flies squarely in the face of the legislative declaration that the injuries, as scheduled, result in a loss which entitles the employee to some compensation, and it highlights the anomaly of an employee who sustains two injuries receiving no compensation when the incidence of only one injury would entitle him to some award.

In determining the "reduced monthly earning capacity", consideration is to be given

"among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury." A.R.S. § 23–1044, subd. D.

 It is clear from the above paragraph that post-injury earnings are not the only factor to be considered in determining whether there is any reduced earning capacity, although the fact of such earnings may raise a presumption of commensurate earning capacity (see White v. Industrial Commission, 82 Ariz. 120, 123, 309 P.2d 250; Laramore v. Industrial Commission, 82 Ariz. 100, 106, 309 P.2d 237). Although the wages that the employee would have earned but for the injuries may not always be determinative (see Miles v.

Industrial Commission, 73 Ariz. 208, 211, 240 P.2d 171), it also should be considered (see Standard Acc. Ins. Co. v. Industrial Commission, 66 Ariz. 247, 252, 186 P.2d 951). Further, in evaluating post-injury earnings, the Commission must discount any "reduction or increase in earning capacity occasioned by general business conditions and not due to the injury * * *" (Whyte v. Industrial Commission, 71 Ariz. 338, 346, 227 P.2d 230, 235).

██ Also to be taken into consideration is whether the post-injury earnings are a proper index of the employee's earning capacity or whether the amount of such earnings truly reflects other considerations which may exaggerate such capacity and be only of a temporary nature. Thus, in 2 Larson, Workmen's Compensation, § 57.34 (1952), it is stated:

"Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and, for purposes of determining permanent disability are to be discounted accordingly."

See Lee v. Industrial Commission, 71 Ariz. 171, 174, 224 P.2d 1085.

██ The physical disability of the employee, though not the sole test, is certainly a criterion to be applied in determining loss of earning capacity (Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160); and

such disability must be evaluated in relation not only to the work that can be performed, but also to the employee's "ability to secure the work which he might do if he were permitted to attempt it." Ossic v. Verde Central Mines, supra, 46 Ariz. at page 191, 49 P.2d at page 402. See, also, Schnatzmeyer v. Industrial Commission, 77 Ariz. 266, 270 P.2d 794.

■ There is no question but that the findings of the Commission should be affirmed if supported by competent evidence (e. g.: Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195; Davidson v. Industrial Commission, 72 Ariz. 314, 235 P.2d 1007). When, however, the Commission does not make the required findings as to earning capacity or where such findings are not supported by competent evidence, this Court will, and on many occasions has, set aside the award (e. g.: Wammack v. Industrial Commission, 83 Ariz. 321, 320 P.2d 950; Scott v. Industrial Commission, 83 Ariz. 139, 317 P.2d 565; Timmons v. Industrial Commission, 83 Ariz. 74, 316 P. 2d 935; Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793; Vinson v. Industrial Commission, 73 Ariz. 356, 241 P.2d 794; Eaves v. Industrial Commission, 73 Ariz. 78, 237 P.2d 809; Huddleston v. Industrial Commission, 72 Ariz. 269, 233 P.2d 829; Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612. Such competent evidence must be in the record and cannot be furnished by data in the Commission's files or by application of the doctrine of "judicial knowledge" (Timmons v. Industrial Commission, supra, 83 Ariz. at pages 80–81, 316 P.2d 935).

■ Of particular significance is the rule that the requirement of competent evidence cannot be glossed over by the mere enumeration of highly conclusory findings. As was very aptly stated in Wammack v. Industrial Commission, supra, 83 Ariz. at page 325, 320 P.2d at page 953:

"Third, the Commission by its purported finding number 14 states that it has given full consideration to each of the matters set forth in Section 23–1044, subd. D supra and full consideration to all of the facts and circumstances pertaining to the case. Other than the wages received for work performed subsequent to the injury, the findings do not reflect what matters were given consideration in arriving at reduced earning capacity and we are of course wholly unable to determine how they influenced the ultimate award. The mere statement that these matters and others have been given consideration does not save this award from the appearance of being arbitrary."

A careful review of the record in the instant case makes it perfectly clear that the only factor upon which the Commission based its finding of no reduction in earning capacity was the actual post-injury

earnings of petitioner. Finding number 10 which establishes that petitioner returned to work at the same rate of pay "so, therefore" he is suffering no loss of earning capacity, supports that conclusion. Despite the recitation in finding number 11 that the Commission gave "full consideration" to all the relevant factors, this finding is not supported by competent evidence. Again, as stated in Wammack v. Industrial Commission, supra, 83 Ariz. at page 325, 320 P.2d at page 953:

"An award must be predicated upon actual evidence in the case and the various imponderables must find some support in evidence."

Here, the evidence disputes the finding of the Commission. It is uncontradicted that the enucleation of petitioner's right eye resulted in loss of depth perception and that the injury to his right hand resulted in loss of function. It is further indisputable that these injuries affected his ability to perform his work and, consequently, his ability to earn a living. Although petitioner was performing practically the same duties as before, he was unable to accomplish them as efficiently, as quickly, or, indeed, as well as before. Such decrease in the quality of performance must necessarily affect the earning capacity of the petitioner here.

The reduced earning capacity of petitioner in relation to his ability to secure employment was suggested, without contradiction, by the statement of his employer that not only would his own company not hire petitioner if he applied for work but, in his opinion, neither would other employers. Even though petitioner was retained in his old position, his opportunities for raises or promotions were materially if not completely reduced. To buttress this point, the employer testified that but for the accident, petitioner would have been earning at the time of the hearing $100 more per month.

It is clear from the record that the Commission, despite its finding to the contrary, did not properly consider "the nature and extent of the physical disability" (A.R.S. § 23–1044, subd. D). No better guide exists for the evaluation of such disability in monetary terms than the statute itself. Cf. 2 Larson, Workmen's Compensation, § 57.31 (1952).

The sole evidence to support the Commission's finding was petitioner's actual post-injury earnings. These earnings were not evaluated in the light of whether there was a change of business conditions or an adjustment in wages for economic reasons in the almost two-year period between the date of the injury and the date petitioner's condition became stationary. Nor did the Commission adequately consider the policy of the employer to retain at their previous wages all employees disabled as the result of on-the-job injuries. Thus, wages

may reflect not the employee's earning capacity in a competitive situation but rather a company policy which, if abrogated for any reason by the employer, will force the employee into a position where he will be unable, because of his injuries, to continue to earn such wages or to secure equivalent employment. The evidence in this case shows that petitioner's present earning capacity does not equal his present earnings.

The effect of the Commission's finding is to penalize an employee for his employer's commendable employment policy and to offer no safeguard to the employee against suspension of that policy upon entry of the Commission's award. Indeed, the prompt return of petitioner to work, first on a partial basis, and subsequently on a full time basis, and his obviously sincere efforts to minimize his disability, seem quite evidently to have operated to his detriment in the proceeding before the Commission. We do not consider such results to reflect the purposes and policies of our workmen's compensation statute.

■■■ Nor do we consider the role of the Commission to be that strictly of an adversary at a proceeding in which it acts also in a judicial capacity, especially when the employee, as here, does not appear before it represented by counsel. The position of the Commission is cast in much broader terms. Thus, A.R.S. § 23–942 provides:

"The commission shall not be bound by the rules of evidence or by technical or formal rules of procedure other than as provided in this chapter. The commission may conduct investigations in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of this chapter."

Consequently, it is as much the task of the Commission to encourage and evaluate fairly proper claims as it is to expose and reject improper ones. No less is required if the Commission is to fulfill its duty "to ascertain the substantial rights of the parties and to carry out the spirit" of the statute which it has the responsibility to administer.

We hold that the award of the Commission denying permanent compensation to petitioner is not supported by competent evidence.

The award of the Commission is set aside.

PHELPS, C. J., and STRUCKMEYER, UDALL and JOHNSON, JJ., concurring.