415 P.2d 112

Stanford L. RODGERS, Petitioner,

v.

SUNNYSIDE HIGH SCHOOL DISTRICT
NO. 12, Defendant Employer,

The Industrial Commission of Arizona,
Respondents.

No. 1 CA–IC 71.

Court of Appeals of Arizona.

June 8, 1966.

Hirsch, Van Slyke, Richter & Ollason,
by Lawrence Ollason, Tucson, for petition-
er.

Robert K. Park, Chief Counsel, by Glen
D. Webster, Phoenix, for respondent In-
dustrial Commission of Arizona.

STEVENS, Chief Judge.

On 21 October 1963, while in the course
of his duties as a coach, coaching being a
portion of his employment responsibilities
in the Sunnyside High School District, the
petitioner fell and sustained an injury. This
injury caused a condition of epilepsy which
can now be reasonably controlled by medica-
tion.

In connection with his occupation, the
petitioner signed two separate and concur-
rent contracts, one in relation to teaching
and the other in relation to coaching. The
compensation for the coaching contract was
an additional $300 per year. The teaching
contract of the petitioner has been renewed
in successive years at an increased salary,
the increase being the regular increment
enjoyed by other teachers as well. At the
time of the accident, the petitioner was
coaching freshman football. Following the
accident he was assigned to coaching track
with no loss of income.

The petitioner is an industrious individual
seeking all reasonable means to support his
wife and four children. He engages in
outside employment. At the formal hear-
ing Rodgers testified relative to his summer
employment as a supervisor of a "A-team",
being high school athletes on a temporary
manpower project. He was a leader and
signed up sixty boys for this OEO project.
Initially they were to go to Yuma to pick
melons and not having been sent to Yuma,
they engaged in highway beautification. He
had the responsibility, in his own words,
of "hustling 80 boys around". He testified,
"we are putting them in alleys, and I have
6 teams and, with one team down one al-
ley and another team down another alley,
and I have to run around hustling these
kids". At the time of the oral argument,
both sides agreed that in reaching the de-
cision relative to the presence or absence of
a change in his monthly earning capacity, it
was proper to exclude the outside non-re-
lated income.

During the oral argument the attorneys
agreed that in determining the presence or
absence of a loss of earning capacity, the
fact of a routine salary increase or incre-
ment, should not be considered. Allen v.
Industrial Commission, 87 Ariz. 56, 347 P.2d
710 (1959). The petitioner urges that by
reason of the industrial injury and dis-
ability, he cannot now coach, and that he

should be awarded compensation for the loss of that portion of his earning capacity.

By its Findings the Industrial Commission established that petitioner suffered a 5% general physical functional disability. The Commission found that at the time of the Award he had the,

"* * * mental and physical ability to undertake and return to his regular occupations on a full-time basis without reduction in his monthly earning capacity * * *."

The Commission further found that the petitioner suffered no loss of earning capacity and that the petitioner would require further medication, the award making provisions therefor. The Commission retained jurisdiction.

The report of the Medical Consultation Board stated that the Petitioner:

"* * * is able to continue with his regular work as a school teacher and coach * * *"

and established the 5% physical functional disability. At the formal hearing the petitioner testified and upon his request a report of Dr. Toll, an orthopedic surgeon, was received in evidence which report stated in part:

"Because of the persistence of symptoms * * * I feel it would be most advisable for him to refrain from athletic activities such as coaching at the present time."

The petitioner testified:

"Q. Now, for the school year '65–'66 is your salary going to be reduced, with the exception of the increment?

A. I am going to lose $300 coaching.

Q. That will be all you will lose from Sunnyside as a result of the injury?

A. That's right.

Q. And Dr. Toll indicates that you should not coach?

A. That's right.

Q. Who is Dr. Toll?

A. Dr. Toll is an orthopedic surgeon in Tucson, and he has been treating me for this hip injury and my lower back and these shooting pains I have down my leg.

Q. Has Dr. Treptow indicated that you should not coach?

A. No, he hasn't."

The petitioner had been seen by Dr. Treptow for neurological evaluations. His reports are contained in the file. He was also a member of the medical evaluation board which, under date of 11 June 1965, expressed the opinion that the petitioner was able to continue his regular work as both teacher and coach. In relation to his teaching contract for the school year '65–'66, the petitioner testified that as of the time of the hearing he had signed a contract as a teacher for that school year further testifying:

"Q. Did you also sign a contract for coaching?

A. No, sir.

Q. Are you going to coach?

A. No, I am not able to coach. My condition is such that it bothers me to demonstrate things to the children.

Q. Have you applied for the job?

A. Yes, sir.

Q. What were you told?

A. I was told the last day of school that I would be hired as track coach again this year.

Q. Why won't you be hired?

A. I don't feel like I can do it.

Q. Do I understand that you don't want to be a track coach?

A. The doctor doesn't want me to coach.

Q. Even though the school would act favorable upon your request?

A. I won't be able to.

Q. That takes care of coaching. That is worth what?

A. $300 as track coach.

Q. And the same as a football coach?

A. Yes, sir."

While the Industrial Commission did not utilize the outside employment followed by the petitioner, nor the petitioner's loss of some phases of outside earnings in computing the presence or absence of loss of earning capacity in relation to the employment covered by the Workmen's Compensation Act, it was quite possible that the nature of the physical activity incident to certain of his unrelated employment, was considered by the Commission in determining the question as to the petitioner's physical capacity to continue to coach.

It is our opinion that upon an examination of the present state of the record, there is evidence before the Commission which supports its Findings and Award.

The Award is affirmed.

CAMERON and DONOFRIO, JJ., concur.