489 P.2d 878

Ray G. HOUSER, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Wayne W. Houser dba Camelback Painting
& Decorating Company, Respond-
ent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. I CA–IC 608.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 20, 1971.

Chris T. Johnson, Phoenix, for petition-
er.

William C. Wahl, Jr., Chief Counsel, The
Industrial Commission of Arizona, Phoe-
nix, for respondent.

Robert K. Park, Chief Counsel, State
Compensation Fund, by Gene Phillippo,
Phoenix, for respondent Carrier.

STEVENS, Presiding Judge.

This case is before the Court by writ of
certiorari to test the lawfulness of an
award and finding of The Industrial Com-
mission issued 24 November 1970. The
award found that the petitioner had a 15%
general physical functional disability, that
he could reasonably be expected to earn
$100 per week, and that he sustained a 21.-
91% reduction in earning capacity entitling
him to an award of $68.42 per month.

The petitioner was injured on 20 No-
vember 1968, while working as a taper at
drywalling, when he fell from a scaffold
and suffered injuries to his elbow, back,
and pelvic areas. He was employed by
Camelback Painting & Decorating Compa-
ny, and was making approximately $35.60
per day, but the Commission set his wage
at $567.87 per month which became final
in a period of time when petitioner was
not represented by counsel.

Following an earlier similar award, the
petitioner's brother, Wayne J. Houser, one
of the owners of Camelback Painting &
Decorating, filed a protest and requested a
hearing. At the hearing, Mr. Houser testi-
fied as follows:

"THE REFEREE: Just make a state-
ment.

"THE WITNESS: He is unable to
walk any distance to speak of, and what
I mean, 'distance,' is half a block. He is
unable to carry any weight on account
of his arm and elbow. He is unable to
drive a pickup truck or a car of any kind

except if it is automatic on account of his heels. He is unable to climb stairs.

"THE REFEREE: Do you know this as of your own personal knowledge?

"THE WITNESS: Yes, I know it to be the truth. Since the accident, he hasn't worked at all. In order for him to eat —like you say, I have tried to protect him and give him a little job just sitting out in the shop seeing who comes and goes which is creating quite a hardship on me."

And:

"BY MR. PHILLIPPO: Q. What job did you create for him?

"A. In our shop we have paint stored in our warehouse and what he is doing is just checking paint in and out; which I have been in business 20 years and this is something that I don't need. But, rather than give him money to live on, he does feel like he is doing me some good. But, I can get by without this.

"Q. Are you suggesting he is an inventory clerk? Is that what you ar talking about?

"A. You might say that."

Mr. Houser also testified that for this service he paid his brother $100.00 a week and furnished him a place to stay, a room, on which he placed a value of $25.00 a week.

No other evidence was presented.

It is the opinion of the Court that this case comes within the purview of Allen v. Industrial Commission, 87 Ariz. 56, 347 P. 2d 710 (1959). In that case, our Supreme Court stated:

"Also to be taken into consideration is whether the post-injury earnings are a proper index of the employee's earning capacity or whether the amount of such earnings truly reflects other considerations which may exaggerate such capacity and be only of a temporary nature. Thus, in 2 Larson, Workmen's Compensation, § 57.34 (1952), it is stated:

'Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and, for purposes of determining permanent disability are to be discounted accordingly.'" 87 Ariz. at 65, 347 P.2d at 716.

And further:

"The effect of the Commission's finding is to penalize an employee for his employer's commendable employment policy and to offer no safeguard to the employee against suspension of that policy upon entry of the Commission's award. Indeed, the prompt return of petitioner to work, first on a partial basis, and subsequently on a full time basis, and his obviously sincere efforts to minimize his disability, seem quite evidently to have operated to his detriment in the proceeding before the Commission. We do not consider such results to reflect the purposes and policies of our workmen's compensation statute." 87 Ariz. at 68, 347 P.2d at 718.

In the instant case, the evidence is quite obvious that the petitioner's employer, being his brother, was literally giving petitioner a job to keep him from starving to death. It was clearly spelled out in Wayne Houser's testimony that the job which he had created for his brother was a face-saving situation to give him some money to live on. The testimony was equally obvious that by doing so that employer had burdened himself with a hardship.

The Commission's attempt to base the petitioner's earning capacity upon medical evidence is contra to the law as stated by our Supreme Court in Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964):

"Nor may the Commission decide from the evidence of medical experts that petitioner was physically able to perform the same type of work at the present time as he was doing previous to his injury. It has long been the rule in this state that medical evidence is not competent for this purpose. Medical

evidence goes only to the physical injury and not as to how that affects earning capacity. Phelps Dodge Corp., Morenci Branch v. Industrial Commission, 90 Ariz. 379, 368 P.2d 450, 451; Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160. The causal relationship between the injury and resulting disability may be the subject of medical testimony. Paulley v. Industrial Commission, 91 Ariz. 266, 371 P.2d 888. But a medical expert is not ordinarily qualified by experience to state an opinion as to whether a claimant with his present disabilities is able to carry out the skills of a particular job— such as here, a diesel mechanic and welder." 95 Ariz. at 243, 389 P.2d at 120.

The test to be applied in Arizona in determining earning capacity is to determine, to the extent possible, in a competitive labor market, whether the disabled employee can probably sell his services and for how much. Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875 (1965).

The award is set aside.

CASE and DONOFRIO, JJ., concur.