316 P.2d 935

Leo M. TIMMONS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent.

No. 6350.

Supreme Court of Arizona.

Oct. 29, 1957.

H. S. McCluskey, Phoenix, for petitioner.
John R. Franks, Robert K. Park, and
James D. Lester, Phoenix, of counsel,
Donald J. Morgan, Phoenix, for respondent
Industrial Commission of Arizona.

UDALL, Chief Justice.

Review by certiorari of an award of the
Industrial Commission. The issues pre-
sented are the claimed inadequacy of com-
pensation allowed; the matter of attorneys'
fees and procedural questions.

### Statement of Facts

Petitioner, Leo M. Timmons, on March
5, 1953, admittedly sustained multiple in-
juries by an accident arising out of and in
the course of his employment as a truck
driver with Fannin's Gas & Equipment

Company. The Industrial Commission of Arizona, the insurance carrier, promptly assumed jurisdiction by holding the claim to be compensable and it was treated as an "odd lot" or unscheduled injury. Petitioner subsequent to the date of injury was allowed compensation for temporary disability in the aggregate sum of $7,754.84, in addition to which he was furnished hospitalization and other accident benefits.

The principal injuries suffered by the 43-year-old petitioner were a compression fracture of the 8th and 12th thoracic vertebrae, possibly a slight injury to the 1st and 2nd lumbar vertebrae, coupled with a bruise and sprain of the left hip. The injured man was promptly hospitalized and his upper body put in a cast. In due time the fractured vertebrae healed, the cast was removed and he has since worn a brace.

No useful purpose would be served in attempting a seriatim review of the voluminous record presented in this case. It would only create confusion and leave the reader in a haze for it is needlessly verbose. Respondent correctly states that the proceedings had before the Commission constituted a legal marathon.

## Medical History

It manifestly appears that during the more than three-year interval—between the date of injury and the final award—the petitioner was furnished the very best of medical care. In all a dozen or more of the "top flight" doctors of Phoenix—each a specialist in his particular field—performed some service in connection with the various treatments administered. At different times, four separate medical boards were appointed by the Commission to examine petitioner and evaluate his record. In each instance the doctors were unanimous in their findings and recommendations and Dr. Hartman, his regular physician, agreed with their conclusions.

As early as December 18, 1953, the first consultation board found that the patient "was making satisfactory progress", and with respect to the back they recommended the patient "should carry on exercises at home under the occasional supervision of his attending physician." It was further their view that "The patient should, shortly after the first of the year, be able to return to light work." The second consultation board, on April 2, 1954, made these comments:

"This patient may safely return to his regular work at this time. It is realized that he will have some complaints of back pain in the fracture sites which may persist for several months.

"As a result of his injury of March 5, 1953, we feel he has sustained a 15% general physical functional disability.

"No further treatments or examinations are necessary since *the only treat-*

*ment he needs to rehabilitate himself is active exercise which can best be accomplished by returning to some form of gainful occupation."* (Emphasis supplied.)

Based upon this report the Commission, on April 23, 1954, found petitioner's condition to have become stationary and it made an award for temporary disability pending determination of loss of earning capacity. The petitioner was ordered to make a sincere, honest and conscientious effort to obtain light work and report his earnings therefrom.

A petition for rehearing was filed, the basis of which was that counsel insisted on his right to cross-examine the doctors who signed said report. This was granted and later a third medical consultation board was convened. These doctors, under date of September 17, 1954, stated that in view of changes noted in the lumbar region they felt a more intensive study of the case should be made by Dr. George McKhann before final evaluation was made. This doctor, who specializes in internal medicine, rehospitalized petitioner and with the aid of laboratory tests and x-ray films made a most thorough study of the man as a whole in an endeavor to find the cause of the subjective complaint that he still suffered constant pain and was unable to do even the lightest work. He suspicioned a low-grade infection but was unable to verify this or find any other objective reason for such complaints. Thereafter, on January 14, 1955, a fourth medical board convened. These four doctors: Eisenbeiss, Haines, Steelman and James R. Moore, after again carefully reviewing the whole record, made these comments:

"It is felt this patient's condition is stationary, that his symptoms are attributable to the injury and the only injury is that of a compression fracture of T-12 and a questionable minor compression fracture of T-8.

"He is no longer in need of treatment and can be discharged with a 15% general physical functional disability."

The Commission accepted this report and ultimately found petitioner's condition to be stationary as of that date.

### Petitioner's Position

Throughout these proceedings it has been petitioner's contention—as shown by the various petitions for rehearing—that at all times since the injury he has been and now is a totally disabled person and is therefore unemployable; has never recovered from his injuries and is unable to work even if it were available; he is without education or technical training and hence employment would necessarily be limited to manual labor. He avows that, nevertheless, in accordance with the directions of the Commission and the doctors, he repeatedly endeavored to obtain some remunerative employment but was unable to

do so. It appears from the record that the reported earnings since date of injury amounted to only $90.35. In keeping with this premise petitioner stoutly maintains that, as a result of the injury, he has suffered a 100% loss of earning capacity. It is very apparent from the record that he is unwilling to accept any award that gives him less than such a rating.

### The Final Award

The Commission, based upon the record then before it, on June 8, 1956 made certain findings and entered its final award in favor of petitioner for unscheduled permanent partial disability, which award was affirmed on rehearing. Inter alia the Commission found:

"7. That the physical condition of said applicant became stationary on January 14, 1955, and is now stationary.

"8. That applicant has a capacity to perform work of a general light nature, or medium light nature, in the commercial field, such as attendant, maintenance man, clerk, dairy worker, custodian and other work of similar nature, and that applicant has a physical capacity to perform said work without material handicap due to the results of his injury by accident. That applicant has a capacity to earn the sum of at least $200.00 per month in such employment; and that said sum of $200.00 per month represents

applicant's reduced earning capacity due to his physical disabilities resulting from his injury by accident; that said reduced earning capacity, when compared with his average monthly wage before the accident ($318.18), represents a loss of earning capacity of approximately 37.14%. The Commission finds that as a result of his injury by accident, applicant has suffered a 37.14% loss in his earning capacity, and that he is entitled therefore to an award for permanent partial disability under the provisions of Section 56–957(c) and (d), A.C.A. 1939 (Section 23–1044(c) and (d) A.R.S.1956) in the amount of $65.00 monthly until further order of this Commission."

It is further recited therein that in determining the ultimate question, viz.: petitioner's loss of earning capacity, the Commission took into consideration all of the factors enumerated in A.R.S. § 23–1044 (D), including the fact that the employee had a 15% general physical functional disability. The award followed the findings and gave compensation to petitioner in the sum of $65 per month.

By assignments of error and propositions of law petitioner challenges finding No. 7 supra, that his condition is stationary; also all of finding No. 8, supra, which fixed the sum of $200 as the amount he is now able to earn; his contention being that both

findings are without support in the evidence and in fact are contrary to the evidence for the reason that the record conclusively establishes he is totally disabled and therefore unemployable.

■ Applicant having repeatedly alleged that his physical condition never became stationary; that he was totally disabled and had therefore suffered a 100% loss of earning capacity, it was incumbent upon him to prove these things. The Commission, as trier of fact, was at liberty to choose whom to believe. We hold it was not compelled to accept the testimony of petitioner that his condition was not stationary and that he was totally disabled to the extent he could not even perform light work. To have done so it must necessarily have rejected evidence given by, and the unanimous opinion of, the members of the medical profession (a) his physical status had become stationary, (b) he had only a 15% physical functional disability, and (c) he was able to perform light work even though some pain would ensue for a period of time. See Harmon v. Industrial Commission, 76 Ariz. 40, 258 P.2d 427.

. It is apparent from the record the belief—probably honestly entertained by petitioner—that he is wholly disabled and can do no work, stems in part from a negative and uncooperative attitude. He sought employment as a crippled person and while we do not dispute the moral obligation of informing a prospective employer of one's physical disabilities, nonetheless a positive attitude is necessary to compete successfully in the labor market. This defeatist attitude is reflected in his relationship with the doctors, one of whom testified:

"* * * He (petitioner) was uncooperative in this respect, he always questioned—this goes back to the hospitalization period—why he should be doing this, why he should be doing that or if he shouldn't consult his lawyer before it would be done. * * * I would say he had an attitude as though he were trying to fight everybody. * * *"

Dr. McKhann,

This same doctor stated the man had "a chip on his shoulder" and was "antagonistic", all of which led him to advise petitioner he probably needed "psychiatric treatment". When petitioner was questioned concerning his ability to work he stated:

"Q. Why is it you believe you can't do anything? A. Well, now, that is pretty obvious, hurt back and you try to exercise it and you can't because it causes too much discomfort." ·

■ The result of all of the above, the injuries and resultant attitude shown by petitioner, is unemployment. This unemployability is urged as a basis for total disability. What we said in Kelsey v. Indus-

trial Commission, 79 Ariz. 191, 286 P.2d 195, 197, is apropos here:

"Petitioner further contends that because he is unable to find regular employment he was then and is now permanently and totally disabled within the meaning of the law. This proposition permeates the entire record. In the Schnatzmeyer case, supra, (Schnatzmeyer v. Industrial Commission, 77 Ariz. 266, 270 P.2d 794), this same contention was made. We there said:

" 'Clearly, from the evidence, petitioner is incapacitated from following his former line of work as a carpenter but is capable of performing light work if the same were available. Consequently, *if compensation is to be allowed on a basis of inability to secure employment he is capable of performing, the Commission must find as a fact that his failure to find work is caused by his injuries.* * * * The cause of unemployment is necessarily an inference to be drawn from all the facts and circumstances bearing on that issue * * *.' "

In Davidson v. Industrial Commission, 72 Ariz. 314, 235 P.2d 1007, at page 1009, we stated:

"The mere showing that a claimant has not returned to work is not proof of the fact that he cannot work because of a physical disability arising out of an industrial accident."

This brings us to the crucial question as to whether there is any evidence in the record to sustain the Commission in its finding that petitioner was able to earn $200 per month doing light work. There must be some evidence showing the kind of light work the man is capable of performing and some evidence showing what he can earn at the work he is able to do. It will be recalled that in the final award several categories were enumerated, viz.:

"* * * in the commercial field, such as attendant, maintenance man, clerk, dairy worker, custodian and other work of similar nature * * *."

No witnesses were called to show that petitioner could do any of these jobs; nor is there any competent evidence as to what a man in such a category could earn. Apparently the Commission seeks to justify the $200 figure by asserting that its statutory duties, e.g., fixing minimum wages in certain cases for women and minors; fixing the prevailing rate of per diem wages on public works; supervising and licensing employment agencies; together with the knowledge obtained from monthly reports from the Employment Security Commission, which are required by law to be filed with it; entitled it in the instant case to take "judicial notice" of wages earned by those in these fields. In an attempt to further bolster its position the Commission has filed with us what it labels an "Economic Brief" containing statistical facts along such lines

8

compiled from its records. Inasmuch as this voluminous document was not produced at the hearings, nor counsel given any opportunity to rebut it or cross-examine any of those compiling such data, we are of the opinion that it cannot be used for any purpose and should be stricken from the record. Furthermore we hold the Commission cannot sustain its position in this matter by invoking the doctrine of "judicial knowledge".

A comparable problem as to a lack of evidence was presented in the case of Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793, 795. Therein, Justice Windes, speaking for a unanimous court, laid down the following legal principle we believe should govern in the instant case, viz.:

"The problem of determining the future earning capacity of a disabled man involves a certain amount of indefiniteness. The object is to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much. To support a finding in this respect the commission must have evidence *that will at least demonstrate the reasonableness of the determination made. There must be something that will justify the conclusion that he is able to perform the services which are used as a basis for*

*measuring earning capacity. * * *"* (Emphasis supplied.)

However, there is this difference in the two cases: the doctors in the Davis case, supra, were of the opinion the injured man would not be able to carry on even moderately light work and that further treatment, including a possible operation, was indicated, whereas in the instant case medical evidence as to petitioner's ability to do light work supports the Commission's finding.

Furthermore we believe the Commission was correct in concluding that where, as here, a man had only a 15% physical functional disability there was surely some gainful work he could do.

There being no competent evidence to sustain the Commission's finding as to petitioner's future earning ability, the award as to this feature must be set aside.

A further assignment of error is the failure of the Commission to follow the 25% contingent fee contract in their award of attorneys' fees. Counsel and petitioner both testified before the Commission that the terms of said contract were satisfactory to them. Petitioner assigns as error a failure to adhere to such evidence in their award.

In McCluskey v. Industrial Commission, 80 Ariz. 255, 296 P.2d 443, 447, we had present counsel advancing the same complaint based on a like contract (the only

distinction being, there the attorney relied upon the naked contract). We stated if counsel wished to seek the certainty of payment, i.e., through an award from the Commission, he has to forsake specific control of the amount of his fee. We held the Commission is guided, but not bound, by the terms of a prior agreement between attorney and claimant.

We also stated in *McCluskey*, supra:

"Furthermore, it is our interpretation of the statute that the legislature intended that in fixing the attorney's fee it should be for a *sum certain* rather than some percentage of the increase obtained payable for the duration of the award. Thus the Commission had the power to fix the fee herein at a figure which it considered represented the reasonable value of petitioner's services."

A.R.S. § 23-1069 (formerly chapter 112, Laws 1953) provides for the Commission, upon application of the attorney or claimant, to fix a "reasonable attorney's fee" for such legal services as may be "reasonably necessary to the processing of the claim." We hold the Commission's action herein allowing a fee of $1250 is supported by the record. In sustaining the fee allowed for services rendered to the date of the final award we do not intend to close the door so as to prohibit counsel from later seeking additional compensation from the Commission for necessary services subsequently rendered.

We find no merit to the complaint as to procedural irregularities. It appears to us from a careful examination of the entire record that from a procedural standpoint the Commission liberally construed the law and their regulations so as to give petitioner every opportunity to fairly present his claim. The numerous rehearings granted attest to this. Some of the threadbare objections, e.g., the failure of the individual commissioners to attend a hearing or personally observe the claimant; an attorney employed by the Commission being permitted to act as a referee; the Commission acting in a dual capacity, i.e., as trustee of the insurance fund and sitting as a quasi-judicial body in determining claims for compensation; the Commission's right to appoint medical consulting boards, etc.; have all previously been passed upon adversely to petitioner's contention. The leading case on the general subject being Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P.2d 649. We adhere to the previous pronouncements of this court on such matters.

The award as to attorneys' fees is affirmed; the finding as to petitioner's future earning ability and the award bottomed thereon are set aside.

WINDES, PHELPS, STRUCKMEYER, and JOHNSON, JJ., concurring.