395 P.2d 616

MAGMA COPPER COMPANY, Successor to San Manuel Copper Corporation, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Gilbert N. Hoyos, Respondents.

No. 8242.

Supreme Court of Arizona.

In Division.

Oct. 7, 1964.

**342**

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for petitioner.

Jack T. Arnold, Tucson, for respondent Hoyos.

Richard J. Daniels, Phoenix, for respondent Industrial Commission of Arizona.

UDALL, Chief Justice.

The petitioner, Magma Copper Company, herein referred to as employer, is before this Court on a writ of certiorari to review an award of the Industrial Commission to Gilbert Hoyos, herein referred to as employee.

The employer contends that the Commission's finding that employee suffered a 54.58% loss of earning capacity as a result of his injury and disability, is not based upon competent evidence but rather on conjecture or guesswork.

Employee was injured while working as a miner for employer on February 12, 1961. He sustained a traumatic amputation of his right leg at the knee joint, a ruptured bladder, and a fractured pelvis. He received considerable medical care and was subsequently fitted with an artificial leg. On April 10, 1962 he returned to work for employer in the capacity of a watchman and has continued to work in that capacity. On January 7, 1963, employee received a rating by a consultation board of a 35% permanent, partial, general disability. On April 17, 1963, the Industrial Commission made its findings and award for unscheduled permanent partial disability, finding that employee's average monthly wage prior to the injury was $476.62; that he had a 35% general disability; that he was now working as a watchman at an average daily wage of $17.74, therefore representing a

17.33% loss of earning capacity in comparison with his average daily wage of $21.46 earned at the time of the injury, entitling him to the sum of $45.43 monthly, until further order of the Commission.

On May 3, 1963, employee protested this award, and on May 16, filed a petition and application for rehearing, alleging that he had a greater than 35% disability and had a greater than 17.33% loss of earning capacity. A formal hearing was held in Tucson, Arizona on September 16, 1963.

At this hearing, Mr. John Sisk, chief guard for employer; Mr. Ray Acton, assistant chief guard; and Mr. D. C. Ridinger, personnel manager, Magma Copper Company, San Manuel Division, all testified outlining the general nature and duties of a watchman and explained the hiring policies of employer, as well as the work that employee was performing. Also at the hearing were Robert E. Hastings, M.D., who testified as to the employee's medical condition; Mr. John Butler, a report and research analyst with the Arizona State Employment Service, who testified as to the nature and general duties of a watchman, as described in a document referred to as a "Dictionary of Occupational Titles;" and Gilbert Hoyos, the employee.

The testimony at the hearing, in part indicates that employee was filling the post of watchman at a guard shack which did not require as much walking and climbing up and down stairs as did other guard shack locations. He would have difficulty with his leg when he had to do much walking or climbing stairs.

The testimony also indicated that although it was not the written policy and questionable whether it was an unwritten policy, employer would generally place their injured workmen in another job which they could perform. This was further substantiated by the fact that several other watchmen were also transferred to their present posts after they had been injured and could not perform their former work. It was also noted that the watchmen are not protected by seniority as the underground miners and that they are a non-represented group. However, it was also noted that a reduction in production or work force at the Mine would not affect the number of watchmen unless the Mine were closed down. The testimony also showed that employee was 42 years old and of Mexican descent; that he had a fourth grade education in Mexico, and that he was a miner all his life. He could not read or write English and had difficulty speaking and understanding English.

After the conclusion of the hearing on September 16, 1963, the Commission, on its own, used an investigator to make inquiries about what watchmen earned in the Tucson vicinity. Without further notice to employer, or a hearing on this matter, the Commission found, basing its finding on the

results of this investigation, that the employee as a watchman in the open labor market would be able to earn the sum of $216.50 per month. No evidence was adduced at the hearing upon what a watchman would earn, except what employee presently earns as a watchman at the Mine.

As a result of this hearing and investigation, the Commission made the following findings, among others, that employee has suffered a 35% general physical functional disability; that the employee returned to work for employer as a watchman, at which employment on the open labor market employee would be able to earn $216.50 per month; that therefore he has suffered a 54.58% loss of earning capacity and is entitled to and awarded the sum of $143.07 monthly until further order of the Commission. The employer petitioned for another rehearing to challenge this latter finding of the Commission. It was denied.

The employer then by writ of certiorari sought review in this Court, contending that there was no competent evidence to sustain the Commission's finding that the employee sustained a 54.58% loss of earning capacity as a result of his injury and disability.

█ It is fundamental that in review by certiorari in this type of proceeding, this Court does not weigh the testimony or resolve conflicts therein; it only searches the record to see whether the Commission's findings are reasonably supported by the evidence. McGill v. Industrial Commission, 82 Ariz. 36, 307 P.2d 1042 (1957). In the present case, the Commission made a finding, among others, that employee, as a watchman, would be able to earn on the open labor market $216.50 per month. This finding could not be based on any evidence in the transcript of the formal hearing, since there was no testimony on this matter. In the abstract of record, however, there is a report by an investigator of the salaries paid to watchmen in the Tucson area. This investigation and report were made after the formal hearing and neither the employer or employee had an opportunity to examine or challenge the report. This Court has admonished the Commission against this practice. In a similar case, this Court in Timmons v. Industrial Commission, 83 Ariz. 74, 316 P.2d 935 (1957), said:

"No witnesses were called to show that petitioner could do any of these jobs; nor is there any competent evidence as to what a man in such a category could earn. Apparently the Commission seeks to justify the $200 figure by asserting that its statutory duties, e. g., fixing minimum wages in certain cases for women and minors; fixing the prevailing rate of per diem wages on public works; supervising and licensing employment agencies; together with the knowledge obtained from monthly reports from the Employment Security Commission, which are re-

quired by law to be filed with it; entitled it in the instant case to take 'judicial notice' of wages earned by those in these fields. In an attempt to further bolster its position the Commission has filed with us what it labels an 'Economic Brief' containing statistical facts along such lines compiled from its records. Inasmuch as this voluminous document was not produced at the hearings, nor counsel given any opportunity to rebut it or cross-examine any of those compiling such data, we are of the opinion that it cannot be used for any purpose and should be stricken from the record. Furthermore we hold the Commission cannot sustain its position in this matter by invoking the doctrine of 'judicial knowledge'." 83 Ariz., p. 80, 316 P.2d, p. 939.

In another similar case, this Court in Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793 (1957) laid down the following legal principle:

"The problem of determining the future earning capacity of a disabled man involves a certain amount of indefiniteness. The object is to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much. *To support a finding in this respect the commission must have evidence that will at least demonstrate the reasonableness of the determination made.*

*There must be something that will justify the conclusion * * *."* (Emphasis added.) 82 Ariz., p. 175, 309 P.2d, p. 795.

See Kurtz v. Matich, 96 Ariz. 41, 391 P.2d 594 (1964); Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279 (1962).

In the present case there was no evidence, other than the investigator's report, which could not be examined or challenged by either employer or employee, to sustain the Commission's finding as to employee's loss of earning capacity.

It should be noted here that post-injury earnings are not the only factor to be considered in determining the reduction in earning capacity. Also to be taken into consideration is whether the post-injury earnings are a proper index of the employee's earning capacity or whether the amount of such earnings truly reflects other considerations which may exaggerate such capacity. Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749 (1962); Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959). As stated in the Timmons v. Industrial Commission and Davis v. Industrial Commission cases, supra, the proper test in finding the loss of earning capacity is to determine as nearly as possible whether in a competitive labor market the subject in his injured condition can

**346**

probably sell his services and for how much. The Commission in the present case sought to apply the proper test, but their findings of what the injured employee, as a watch-man could earn in an open labor market and his loss of earning capacity, was based upon evidence which the employer had no notice or opportunity to challenge, therefore in the interest of fairness the award is set aside.

LOCKWOOD, V. C. J., and STRUCK-MEYER, J., concur.