405 P.2d 875

**David R. SHROYER, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona and Chicago Bridge and Iron Company, Respondents.**

**No. 8545.**

Supreme Court of Arizona.

In Division.

Sept. 29, 1965.

A. D. Ward, Minne & Sorenson, Phoenix, for petitioner.

Courtney L. Varner, Industrial Commission, Joseph P. Ralston, Ryley, Carlock & Ralston, Phoenix, for respondents.

McFARLAND, Justice:

This is a writ of certiorari to review an award of The Industrial Commission of Arizona, hereinafter designated the Commission, which in effect denied compensation to petitioner, David R. Shroyer, hereinafter designated as claimant.

Claimant, a journeyman boilermaker, was injured within the course of his employment September 4, 1962, while in the employ of respondent Chicago Bridge and Iron Company at Page, Arizona. The Commission, in an order entered December 10, 1963, determined that claimant's average wage at the time of injury was $1,000 per month, that his physical condition became stationary November 23, 1963, and he had sustained a five percent general physical functional disability as a result of the accident. At that time the Commission ordered claimant to "make a sincere, honest, and conscientious effort to obtain and retain work of any nature that he was physically and mentally capable of performing." On March 24, 1964, the Commission made an award for unscheduled partial disability, wherein it determined that claimant had sustained a 65.48 percent loss of earning capacity as a result of the injury. During the period between November 23, 1963, and March 24, 1964, claimant had been unable to perform the heavy tasks required of a journeyman boilermaker and was restricted to lighter tasks, such as welding and supervisory positions. During this period claimant's average wage was $345.20 per month.

A rehearing was granted the respondent employer on July 7, 1964, and the Commission issued an amended award on September 10, 1964, which found that "the general physical functional disability has not caused a permanent partial disability for work, nor has it caused any loss in said applicant's earning capacity. By virtue of the premises, applicant is not entitled to compensation for permanent partial disability under the provisions of A.R.S. § 23–1044, (c) and (d) 1956." At the time of the rehearing claimant was employed as a boilermaker foreman, and had been so employed in that capacity for the same employer, Ralph M. Parsons Company, Kingman, Arizona, since February 20, 1964, (less than

five months) earning in excess of $1,000 per month.

· At the rehearing, claimant testified that he had worked full time after the injury until November 25, 1962, and was then laid off, apparently because he could not still perform the heavier, or "bullgang," work. He then testified concerning various jobs he had held from July 1963 until the date of the rehearing, all of which were of the lighter variety. He indicated that, prior to the injury, he was able to find full-time employment as a journeyman boilermaker earning $1,000, or more, per month. As to the job with Ralph M. Parsons Company, at which he was employed at the time of the rehearing, he testified that a friend working as boilermaker superintendent, one Frederick Stalzer, had asked for him as foreman. It appeared that this job was about to come to an end, or at least the part claimant could perform, and there was no guarantee of other like jobs in the future. It appears that claimant is unable to do about 80 percent of the work required of a journeyman boilermaker, but is restricted to some two or three of the various classifications, or tasks, listed on the union work classification sheets—i. e., welding, tube rolling, foreman. Claimant testified that, of the three classes of work he is able to perform, two or three years might go by before such work would be available. · ·

Next, Frederick Stalzer testified. · He was a long-time friend of claimant and the boilermaker general superintendent on the Ralph Parsons Company job who had asked the union for claimant as foreman. He testified that there was only a five to ten percent chance of claimant's obtaining a job as foreman. He also stated that, since welding was only one phase of the boiler-maker profession, a man unable to do "bull-gang" or heavy work would not stay on a job. Stalzer testified that a welder would be much reduced in job opportunity as compared to a physically-qualified journeyman boilermaker, though he considered claimant a highly competent foreman, and would always request him for that position.

Last, Dewey Isaacs, dispatcher for the local boilermaker's union, testified. He stated that he would not send claimant on a job requiring "bullgang" work, although he would for a job as foreman or as a welder. Isaacs also testified that there is reduced job opportunity for one having a partial disability, such as a back injury; that a person handicapped and confined to light work such as welding would work less than 50 percent of the time, as compared to one not so handicapped; that, in a supervisory position, chances of obtaining or keeping a foreman job would be about ten percent. Isaacs also stated that about 30 percent of the work of boilermakers is welding, and that, at the time of the rehearing, most of the jobs in this area re-

quired welders who could do heavy work also because they were small jobs on which separate welders were not hired. Welding was therefore done by the same men who did the heavy work.

All three testified to the effect that, as a welder and foreman, there was less opportunity for employment than there would be as a fully-qualified journeyman boilermaker able to perform heavy work.

 The issue then, on writ of certiorari brought by claimant, is whether the findings and award of the Commission can be sustained upon the record before the court. This court has held on many occasions that the Commission will be upheld if its findings are reasonably supported by the evidence. Russell v. Industrial Commission, 98 Ariz. 138, 402 P.2d 561; Magma Copper Co. v. Industrial Commission, 96 Ariz. 341, 395 P.2d 616; Phelps Dodge Corporation, Morenci Branch, v. Industrial Commission, 90 Ariz. 248, 367 P.2d 270; and Fendell v. Industrial Commission, 89 Ariz. 180, 359 P.2d 988. As stated in the Magma Copper Company case, supra:

"It is fundamental that in review by certiorari in this type of proceeding, this Court does not weigh the testimony or resolve conflicts therein; it only searches the record to see whether the Commission's findings are reasonably supported by the evidence. Mc-

Gill v. Industrial Commission, 82 Ariz. 36, 307 P.2d 1042 (1957)." 96 Ariz. at 344, 395 P.2d at 618

It would appear that the Commission determined claimant's reduced earning capacity solely on the basis of wages being earned by him at the time of the rehearing. At that time he had been employed continuously by the Ralph M. Parsons Company in Kingman, Arizona, as a boilermaker foreman earning in excess of $1,000 per month. The question raised is whether the Commission erred in using this sole criterion.

A.R.S. § 23–1044 provides, in part:

"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation.

"D. In determining the amount which represents the reduced monthly earning

capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

Clearly the above provision requires examination of various factors in determining future earning capacity upon which to base an award. The reasoning behind such statutory requirement is stated in 2 Larson's Workmen's Compensation Law (1952):

> "It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things: increase in general wage levels since the time of accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings. [2 Larson, § 57.21]

\* \* \* \* \* \*

> "\* \* \* a definite permanent physical impairment will probably, sooner or later, have an adverse effect on earning capacity. It may be years before the effect is felt. But a man with a \* \* \* damaged back, \* \* \* will presumably have a harder time doing his work well and meeting the competition of young and healthy men. His efficiency may deteriorate gradually and imperceptibly. He may have difficulty in retaining employment in bad times, or in getting new employment if he has occasion to change jobs." 2 Larson, § 57.31

Arizona has at various times made reference to the use of post-injury earnings. The most extensive discussion of the general principles in this area is found in Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710, which involved a policy of an employer to keep on injured employees, in which this court found that the Commission erred in determining that claimant was

not entitled to permanent compensation because he had not suffered a loss in earning capacity, and set aside the award. After referring to A.R.S. § 23–1044 subsec. D, supra, the court stated:

"It is clear from the above paragraph that post-injury earnings are not the only factor to be considered in determining whether there is any reduced earning capacity, although the fact of such earnings may raise a presumption of commensurate earning capacity (see White v. Industrial Commission, 82 Ariz. 120, 123, 309 P.2d 250; Laramore v. Industrial Commission, 82 Ariz. 100, 106, 309 P.2d 237). Although the wages that the employee would have earned but for the injuries may not always be determinative (see Miles v. Industrial Commission, 73 Ariz. 208, 211, 240 P.2d 171), it also should be considered (see Standard Acc. Ins. Co. v. Industrial Commission, 66 Ariz. 247, 252, 186 P.2d 951). Further, in evaluating post-injury earnings, the Commission must discount any 'reduction or increase in earning capacity occasioned by general business conditions and not due to the injury * * *' (Whyte v. Industrial Commission, 71 Ariz. 338, 346, 227 P.2d 230, 235).

"Also to be taken into consideration is whether the post-injury earnings are a proper index of the employee's earning capacity or whether the amount of such earnings truly reflects other considerations which may exaggerate such capacity and be only of a temporary nature. * * *

\* \* \* \* \* \*

"The physical disability of the employee, though not the sole test, is certainly a criterion to be applied in determining loss of earning capacity (Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160); and such disability must be evaluated in relation not only to the work that can be performed, but also to the employee's 'ability to secure the work which he might do if he were permitted to attempt it.' Ossic v. Verde Central Mines, supra, 46 Ariz. [176] at page 191, 49 P.2d [396] at page 402. See, also, Schnatzmeyer v. Industrial Commission, 77 Ariz. 266, 270 P.2d 794.

\* \* \* \* \* \*

"A careful review of the record in the instant case makes it perfectly clear that the only factor upon which the Commission based its finding of no reduction in earning capacity was the actual post-injury earnings of petitioner. * * * Again, as stated in Wammack v. Industrial Commission, supra, 83 Ariz. [321] at page 325, 320 P.2d [950] at page 953:

" 'An award must be predicated upon actual evidence in the case and the

**394**

various imponderables must find some support in evidence.'

\* \* \* \* \* \*

"It is clear from the record that the Commission, despite its finding to the contrary, did not properly consider 'the nature and extent of the physical disability' (A.R.S. § 23–1044, subd. D). No better guide exists for the evaluation of such disability in monetary terms than the statute itself. Cf. 2 Larson, Workmen's Compensation, § 57.31 (1952).

"The sole evidence to support the Commission's finding was petitioner's actual post-injury earnings. \* \* \*"
87 Ariz. at 65, 347 P.2d at 716

The Allen case was cited and followed in Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749.

A further discussion is found in Magma Copper Company v. Industrial Commission, supra, which involved a miner kept on as a watchman after he was injured, in which the court, in setting aside the award, stated:

" 'The problem of determining the future earning capacity of a disabled man involves a certain amount of indefiniteness. The object is to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much... To support a finding in this respect the com-

mission must have evidence that will at least demonstrate the reasonableness of the determination made. There must be something that will justify the conclusion \* \* \*.' (Emphasis added.) Davis v. Industrial Comm., 82 Ariz. [173], p. 175, 309 P.2d [793], p. 795." 96 Ariz. at 345, 395 P.2d at 619. See also Sproul v. Industrial Commission, 91 Ariz. 128, 135–136, 370 P.2d 279, 284–285, Timmons v. Industrial Commission, 83 Ariz. 74, 81, 316 P.2d 935, 939

■ Examination of the instant case in the light of the above principles makes clear that the Commission erred in basing its award entirely upon the post-injury earnings. It is admitted by all that claimant suffered a five per cent general physical functional disability, but the Commission denied compensation on the grounds that claimant's earning capacity was not impaired. Examination of the record establishes that the only indication of such unimpairment must have been based on the job claimant was employed in at the time of the rehearing. The testimony of the two witnesses, claimant's supervisor, and his union agent, indicated clearly that, while claimant was employable as both a welder and as a foreman, he was limited in obtaining work in both these jobs because of little experience as a foreman and less need of a boilermaker only qualified to perform welding and supervisory tasks.

This court stated in Wammack v. Industrial Commission, 83 Ariz. 321, 320 P.2d 950:

> "Third, the Commission by its purported finding number 14 states that it has given full consideration to each of the matters set forth in Section 23–1044, subd. D supra and full consideration to all of the facts and circumstances pertaining to the case. Other than the wages received for work performed subsequent to the injury, the findings do not reflect what matters were given consideration in arriving at reduced earning capacity and we are of course wholly unable to determine how they influenced the ultimate award. The mere statement that these matters and others have been given consideration does not save this award from the appearance of being arbitrary." 83 Ariz. at 325, 320 P.2d at 953

In the Wammack case, claimant's employer at the time of the accident kept him on after the injury in a temporary capacity doing easier work. The award was set aside.

Certainly, the object of determining future earning capacity—to-wit, determination as nearly as possible whether in a competitive labor market claimant, in his injured condition, could possibly sell his services and for how much—was not considered by the Commission in the instant case. The competitive labor market, in which the claimant would be selling his services, was as a welder and as a foreman. Clearly, in such a market, claimant would have a harder time selling his services, notwithstanding the fact that he was employed, and had been so employed for the past five months (at the time of the hearing) as a boilermaker foreman earning in excess of $1,000 per month.

The Commission may not arbitrarily ignore the existence of a physical functional disability solely on the basis of post-injury employment. Temporary employment—though of a five-month duration—may not be examined in a vacuum, but must be considered along with all the factors laid out by statute for determination of impairment of future earning capacity, A.R.S. § 23–1044, subsec. D, supra. A person having a disability impairing his earning capacity is entitled to compensation under our laws. Since the Commission failed to consider the five percent impairment of claimant's physical functional capacity in making its award, and based said award solely upon claimant's post-injury earnings, its finding must be set aside.

The award is therefore set aside.

BERNSTEIN and UDALL, JJ., concur.