494 P.2d 735

Dorothy I. DAVIS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

National Cleaning Contractors, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 557.

Court of Appeals of Arizona, Division 1, Department A.

March 14, 1972.

Rehearing Denied April 18, 1972.

Review Denied June 13, 1972.

Lindauer & Revis, P. A. by William B. Revis, and Mark H. Goldberg, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by R. Kent Klein, Phoenix, for respondents employer and carrier.

CASE, Judge.

This is an appeal by writ of certiorari to review the Commission's Order Denying Petition for Hearing which was entered after the Commission had entered its Decision Upon Hearing and Additional Find-

ings and Award for Unscheduled Permanent Partial Disability which found, among other things, that applicant had suffered a 25 percent reduction in earning capacity as a result of an industrial injury.

In November of 1966, petitioner, Dorothy I. Davis, then 43 years of age, was employed as a maid with National Cleaning Contractors, Inc. She sustained an injury to her low back while lifting a wastepaper basket full of IBM cards. She remained off work for two days and then returned to her job. She experienced low back discomfort and ultimately ceased working during the latter part of January, 1967. On 9 January 1967 she filed her claim for benefits which was accepted. Her condition was originally diagnosed as a lumbosacral strain but her condition gradually worsened and she was ultimately hospitalized. On 21 February 1967 a neurosurgeon, Dr. W. B. Helme, performed a laminectomy to excise a protruded disc at L–4 and L–5 interspace. On 10 October 1967 petitioner was released for light work by Dr. Helme. On 8 November 1967 she was examined in group consultation by three orthopedic surgeons and a neurosurgeon who concluded that she had complaints which were related to her injury but that she was capable of performing her regular work and could be discharged with a five percent general physical functional impairment. Petitioner thereafter contacted Dr. Helme on 11 November 1967, objecting to this conclusion because she felt the Board had based its determination on the mistaken premise that she was required to lift wastebaskets weighing approximately seven pounds when in fact the contents thereof weighed anywhere between 15 and 32 pounds. Thereafter, Dr. Helme advised the Commission:

"I do think the patient should not do frequent heavy lifting. I am in no position to resolve the factual inconsistency [concerning the weight of the wastepaper baskets]."

On 18 January 1968 the Commission issued Findings and Award and Order Pending Determination of Earning Capacity, petitioner's average monthly wage having been previously set at $233.98. Thereafter, petitioner reported to the Commission the names of prospective employers to whom she had unsuccessfully applied for work. She drew benefits and thereafter on 31 March 1968 advised the Commission that her husband had sustained a heart attack and it would be necessary that she care for him and consequently would be unable to look for work. On 27 March 1968 petitioner was examined by Dr. Howard P. Aidem, an orthopedic surgeon, and, as a result of that examination, Dr. Aidem recommended investigative studies. Such report was filed with the Commission prior to the hearing of 5 July 1968 relative to loss of earning capacity. Since a Petition to Reopen had been filed prior to the date of this hearing, the referee on 11 July, subsequent to said hearing, recommended to the Commission that certain medical studies proposed by Dr. Aidem be performed and the Commission authorized these tests. Petitioner was again placed on temporary compensation benefits and Dr. Aidem undertook to treat her conservatively for her complaints. In April of 1969 Dr. Aidem advised that she continued to have low back complaints but that his examination of the low back was normal and that the majority of her symptoms were in her neck but he did not consider these complaints referable to her accident.

On 22 May 1969 a second group consultation was held in which Dr. Aidem participated, together with a neurosurgeon and one Dr. James R. Moore, specialist in administrative medicine. After review of petitioner's history and X rays and a physical examination, it was the conclusion of this Board that her condition was stationary and that she could perform her usual activities as a maid and that she had no increased disability over the five percent previously awarded.

On 29 January 1970 a hearing on loss of earning capacity was held. At that hearing, petitioner, her husband, an acquaintance of

the petitioner, a representative of defendant employer and Dr. Aidem appeared and testified. Petitioner stated that she was still experiencing considerable back pain and that for this reason she had not applied for a position as a maid since she did not feel that she could perform the required duties of such employment. She further testified that from 1 July 1969 through 31 July 1969 she earned $46.70 working for an organization doing telephone solicitations and further that from August through October of that same year she earned $73.-10. That from 1 November 1969 through 28 February 1970 she earned a total of $125.33. Her average monthly earnings from 1 July 1969 through 28 February 1970 were $34.39 per month.

On 25 February 1970 the hearing officer issued his report recommending that the Commission find a 25 percent reduction in earning capacity as a result of the injury of 25 November 1966, which recommendation was adopted by the Commission. Thereafter, petitioner filed Petition for Hearing for the purpose of presenting further evidence on the loss of earning capacity which was denied and this appeal followed.

Petitioner challenges the award of the Commission on loss of earning capacity as being unsupported by reasonable evidence and upon the further ground that the Commission abused its discretion in refusing to grant a full hearing to the petitioner, with counsel representing her, (she having appeared throughout the proceedings *in propria persona*), when its award of 27 March 1970 contained a provision granting her 20 days in which to apply for such a hearing.

We will address ourselves to the issues raised in the order presented.

We must view the evidence in a light most favorable to upholding the Commission's award, Oliver v. Industrial Commission, 14 Ariz.App. 200, 481 P.2d 886 (1971), and affirm if we find any substantial evidence to support it. Timmons v. Industrial Commission, 83 Ariz. 74, 316 P.2d

935 (1957). We quote in part from the referee's report of 25 February 1970.

"(10) The aforesaid determination [being the 25% reduction in earning capacity] is based upon the following facts:

"(a) Applicant is 47 years of age.

"(b) Applicant's formal education includes completion of two and one-half years of high school. She has had no special or technical training.

"(c) Applicant had been fully employed as a maid performing custodial type duties up to the time of her injury.

"(d) Prior to the time of the industrial injury of November 25, 1966 she had no disability affecting her employment.

"(e) Evidence has established that applicant is able to perform at least light type duties similar to those performed prior to the industrial injury, and that she should be able to lift weights up to at least 15 pounds. Testimony indicated that she would have some difficulty obtaining this type of employment with moderate limitations on weight lifting, furniture moving, etc., and considering the fact that she probably would not be able to stand on her feet for exceedingly long periods of time. According to the testimony of lay and medical witnesses it is felt that her earning capacity in this type of employment has been reduced approximately 25%."

This report was adopted by the Commission.

A review of the testimony of the hearing of 29 January 1970 reveals that Dr. Aidem stated that petitioner was capable of carrying out the duties of a maid. It is apparent that the hearing officer relied upon this testimony in arriving at his conclusion relative to loss of earning capacity. It is a well-established principle that a medical expert is not qualified to express an opinion concerning the ability of a person to perform specific jobs unless such expert is qualified with special knowledge concerning these jobs. Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118

(1964); Moore v. Industrial Commission, 2 Ariz.App. 143, 406 P.2d 861 (1965). Petitioner argues that Dr. Aidem was not qualified as to his knowledge of the duties of a maid and, hence, the testimony cannot be relied upon as a basis for concluding that petitioner was able to return to her former work. Respondent argues that inasmuch as there was a report in the file from the employer pertaining to the duties of petitioner's job, Dr. Aidem would have sufficient information to form a basis for his opinion relative to petitioner's ability to return to work. We do not agree. The transcript of Dr. Aidem's testimony reveals that he was not asked whether he had read such a report or whether he was familiar with the tasks that petitioner was required to perform. We therefore conclude that Dr. Aidem's statement that petitioner was able to carry out her duties as a maid was without foundation and, hence, should have been disregarded by the hearing officer and the Commission.

The evidence before the Commission demonstrated that petitioner's average monthly wage subsequent to her injury was $34.39. We fail to see how the Commission arrived at a determination that petitioner's potential earnings could be expected to be $175.48 per month. Post-injury earnings create a presumption of earning capacity commensurate with them. Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875 (1965). Petitioner made a conscientious effort to secure employment she was capable of performing. As we said in Meadows v. Industrial Commission, 12 Ariz.App. 114, 119, 467 P.2d 954, 959, (1970):

"In our opinion, where the testimony discloses a satisfactory effort on the part of an injured workman to secure employment in the area of his residence, the burden of going forward with the evidence to show the fact of available suitable employment shifts to the party resisting the petition."

Respondent adduced no evidence that there was available suitable employment for petitioner in the cleaning field or in any other field where her educational and physical background would qualify her for employment.

We hold that the Commission was in error in ignoring petitioner's actual post-injury earnings.

Having concluded that the award must be set aside, we need not consider petitioner's other contention.

Award set aside.

STEVENS, P. J., and DONOFRIO, J., concur.