512 P.2d 875

The TRAVELERS INSURANCE CO., and
Custodis Construction Co., Petitioners,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Edward Barnes, Respondent Employee.

No. I CA–IC 796.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 2, 1973.

Rehearing Denied Sept. 11, 1973.

Burch, Cracchiolo, Levie, Guyer & Weyl
by Michael E. Bradford and Joseph L.
Moore, Phoenix, for petitioners.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent, The Industrial Commission of Ariz.

Morgan & Jerome by D. A. Jerome, Phoenix, for respondent employee.

HAIRE, Judge.

The question presented on this review of an award entered in a workmen's compensation proceeding is whether the evidence supports the respondent Commission's determination concerning the respondent employee's loss of earning capacity.

The facts show that the employee, a resident of Georgia, came to Arizona when the employer for whom he had been working was awarded a subcontract for the construction of a smelter smokestack at San Manuel, Arizona. He was standing on a four-high stack of brick pallets when he stepped on a piece of pasteboard and fell to the concrete floor, landing on his feet. He received injuries to his feet, particularly his heels, which resulted in his immediate hospitalization. The injury occurred on April 30, 1970, and he was hospitalized from that date to May 13, 1970. His injuries were diagnosed by Dr. F. M. Findlay as severe contusions of both heels. On May 19, 1970, he was released to regular work, and Dr. Findlay did not see him again.

The employee's work as a laborer involved working on scaffolds at various heights and required that he lift and move bricks and other materials while he was on such scaffolds. He reported to his supervisor the day after he was released by Dr. Findlay, and told him that because of the pain in his feet he did not believe that he was physically able to perform the work required, but no other work was offered to him. He testified that his pay had stopped the day he entered the hospital, but his dormitory costs had continued, and that when he was released from the hospital, he was "broke"; that since he did not have enough money to remain in the San Manuel area, he obtained funds from his family

so that he could return to his home in Rome, Georgia.

He testified that after he arrived in Rome, Georgia, his feet continued to hurt so he went to see Dr. James M. Kelley, an orthopedic specialist, and that Dr. Kelley took additional X-rays of his feet and prescribed whirlpool and ultrasonic treatments. Dr. Kelley testified by deposition that at the time of his initial examination, the employee's heels were still discolored with considerable swelling. The X-rays revealed undisplaced fractures of the os calcis (heel bone) in both feet. These fractures appeared to be almost healed. By July 27, 1970, Dr. Kelley felt that the employee's condition was stationary and that at that time he had a disability rating of 10% functional impairment of each foot as a result of the industrial injury of April 30, 1970. The employee was to return to see Dr. Kelley again in about two months, at which time Dr. Kelley would give him a permanent disability rating. The employee testified that inasmuch as Dr. Kelley had told him that he could do nothing further for him, he did not return.

■ A good portion of the petitioner's brief in this matter is devoted to a detailed analysis of the above medical testimony, as well as other medical testimony not set forth above, which bears on the question as to whether the respondent employee incurred a permanent partial disability as a result of the injury of April 30, 1970. This question is not properly before us. The hearing officer's award of May 26, 1971, expressly found that "the medical evidence establishes that applicant has sustained an unscheduled permanent partial disability as a result of his multiple injuries of April 30, 1970" and that "the applicant's condition became stationary on July 27, 1970 and continues to be stationary." Neither party timely requested review of the May 26, 1971 award, and therefore it became final as to the above issues.

■ By the foregoing, we do not mean to say that because of the May 26,

1971 award, no medical testimony relating to the employee's ability to physically perform should be brought to the attention of this court. The May 26, 1971 award expressly reserved jurisdiction in the Commission to make a determination of the amount of compensation to which the employee was entitled. Therefore, even if we assume that the employee sustained the permanent partial disability found by the hearing officer and further that his condition was stationary as of July 27, 1970, the question still remains as to how this physical disability affected his earning capacity. Properly qualified medical testimony would be relevant to the determination of this question. However, because of the finality of the May 26, 1971 award, the only competent medical testimony would be that which flows from the premise that the employee had in fact suffered the permanent partial disability found by the hearing officer and that on July 27, 1970 his condition had become stationary. The only medical testimony which purports to meet this standard is that of Dr. Kelley, and he did express his opinion that as of July 27, 1970, the employee could have returned to his regular work and that while he might have had some discomfort in his heels after having been on them for eight hours, it would not have kept him from doing his regular work. In arriving at his findings and award on the earning capacity issue, the hearing officer rejected this opinion testimony of Dr. Kelley, stating:

"That although Dr. Kelley did state in the deposition of April 5, 1971, that in his opinion applicant could return to his customary work as of July 27, 1970, there was no showing that the doctor was qualified as an expert in the field of construction labor, nor that he was even familiar with what is required in the work performed by applicant on the date of his injury."

█ We have reviewed the record and in our opinion the hearing officer correctly rejected this portion of Dr. Kelley's testi-mony for the reason that there was insufficient foundation in the record. Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160 (1944); Estrada v. Industrial Commission, 10 Ariz.App. 580, 461 P.2d 88 (1969). On the other hand, without going into the details, the employee's testimony quite convincingly demonstrates his desire to return to his former occupation, together with his physical inability to fulfill the duties required in that former occupation.

█ Concerning his present earning capacity, the employee testified that for the past eighteen months he had been employed as a "slasher" machine operator in a Georgia cotton mill—an occupation which requires very little standing. He also presented evidence as to his earnings from this occupation, and, primarily based upon this evidence and considering the employee's age, education, prior training and abilities, the hearing officer computed the employee's reduction in earning capacity. Relying upon Whyte v. Industrial Commission, 71 Ariz. 338, 227 P.2d 230 (1951), the carrier contends that it was error for the hearing officer to equate the employee's post-injury earnings in Georgia with his pre-injury earnings in Arizona, without some evidence which would serve to correlate the two. *See also* Arizona Public Service Co. v. Industrial Commission, 16 Ariz.App. 274, 492 P.2d 1212 (1972). We find no error under the circumstances here presented. Our courts have many times held that evidence of post injury earnings creates a presumption of commensurate post-injury earning capacity, although the Commission has the duty to consider other factors made applicable by the evidence. Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967); Davis v. Industrial Commission, 16 Ariz.App. 535, 494 P.2d 735 (1972); Gutierrez v. Industrial Commission, 8 Ariz.App. 477, 447 P.2d 569 (1968). While it is true that the injured employee has the burden of showing his loss of earning capacity, Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612 (1950), we hold that in the case under

consideration the employee adequately met that burden. If the carrier was of the opinion that other factors such as a difference in economic conditions or in wage scales made such pre-injury and post-injury wage comparisons inequitable without adjustment, then the carrier should have produced evidence as to these factors.

We hold that there is sufficient evidence to support the loss of earning capacity award entered by the hearing officer on January 25, 1972, and the Commission's affirmance thereof. The award is affirmed.

JACOBSON, C. J., Div. 1, and EUBANK, P. J., concur.