517 P.2d 1076

**Andrew CIER, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Stearns-Roger Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 841.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 15, 1974.

Rehearing Denied Jan. 30, 1974.

Review Denied Feb. 26, 1974.

Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, by George B. Morse, Tucson, for respondent employer and respondent carrier.

OPINION

HAIRE, Presiding Judge.

■ On this review by certiorari of an award entered by the Industrial Commission in a workmen's compensation proceeding, the sole question presented is whether there was reasonable evidence to support the Commission's determination that the petitioner had not sustained a reduction in earning capacity as a result of his industrial injury.

The petitioner was employed as a journeyman millwright at the time he injured his back in 1969. His condition became stationary in September 1971, at which time he was discharged from further medical treatment with a general physical functional impairment of 10%.

Petitioner described the work of a journeyman millwright as involving the assembly, erection, alignment and maintenance of machinery. This entails stooping, bending and lifting, as well as climbing on and off ladders and scaffolding. Although petitioner's doctor did not expressly state that petitioner could not now perform the duties required in a millwright's work, the petitioner testified that he could not perform the heavy type of millwright's work then generally available in the Tucson area, and the doctor's testimony was such that it supports petitioner in this regard. Petitioner thought that he could perform a millwright's work in aligning light machinery, even though he could not do the heavy work then generally available. Petitioner's work experience in the trade of a millwright during the past 22 years had involved some 13 years as a journeyman millwright, some 4 years as a millwright foreman, and some 4½ years as a millwright superintendent. At the time of his

injury, he was working as a journeyman millwright.

Subsequent to his injury, petitioner returned to his work as a journeyman millwright for the respondent employer in the beginning of November 1970, and worked as a journeyman millwright until he quit on January 29, 1971. He stated that his reason for quitting was that he could no longer do the work that he had to do. Slightly over two weeks later, on February 17, 1971, he accepted employment as a millwright foreman for a different employer. He worked at this employment for a period in excess of 13 months, terminating on April 7, 1972 because the job was coming to a close. During September of this thirteen month period his condition became stationary, and on December 15, 1971 the respondent Commission entered its initial award finding no loss of earning capacity. The petitioner subsequently filed a request for hearing on January 6, 1972 and the formal hearing was held on Wednesday, April 12, 1972. Petitioner's previously mentioned 13 months employment as a millwright foreman had terminated on April 7, 1972, the Friday prior to the hearing.

In addition to the foregoing, there was evidence that a millwright foreman's wages (after allowing for adjustment due to a general increase in the union wage scale) are 10% higher than those of a journeyman millwright, the occupation in which the petitioner was injured. Further, there is no contention that petitioner is in any way disabled from performing the work of a millwright foreman or supervisor, a position which he has held for over 40% of his career as a millwright.

The hearing officer found that the petitioner had not carried his burden of showing a loss of earning capacity, and the sole question presented by petitioner on this review is whether the petitioner carried his burden of establishing a loss of earning capacity. The essence of petitioner's argument is the contention that when a claimant incurs an injury which disables him

from continuing in his particular trade (here as a journeyman millwright), there must be a resulting loss of earning capacity because the total job market available to the claimant is thereby necessarily lessened by the elimination of the claimant's prior occupation. In support of this argument, and to show the extent of the job market lessening in this particular case, petitioner presented evidence showing that he works out of a union hall; that on the union list there is no difference in job classification between a journeyman millwright and a millwright foreman; that when a millwright's name comes to the top of the union list he is sent out on the next job— whether the job requires a journeyman millwright or a millwright foreman. Petitioner expected to reach the top of the union list and be called within two weeks of the hearing. At that time, he could refuse two job offers without penalty. However, if he refused the third he would go to the bottom of the list and have to work up to the top again. He reasons that since there are generally ten millwrights under each foreman, his chances of future employment are lessened to such a degree that a loss of earning capacity award was required.

■ It is well established in Arizona law that post-injury wages earned by a claimant, even though in a position unrelated to his prior occupation, may properly be considered by the Commission with other relevant factors in determining a claimant's loss of earning capacity. White v. Industrial Commission, 87 Ariz. 154, 348 P.2d 922 (1960). Obviously under the circumstances of this case it was proper for the hearing officer to consider petitioner's post-injury earnings as a millwright foreman. However, petitioner's argument is to the effect that notwithstanding the admitted increase in his post-injury *earnings,* and the principle that post-injury earnings raise a presumption of commensurate post-injury earning capacity, Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967), he still has incurred a loss in his *earning capacity* because of the pos-

sibility of his inability in the future to obtain employment as a millwright foreman. In this connection we point out that although petitioner was out of work at the time of the hearing, it is also true (as stated in petitioner's brief) that at times prior to the industrial accident he was "between jobs" just as he was at the time of the hearing.

In the hearing officer's decision he carefully set forth and considered the factors specified in subsection D of A.R.S. § 23–1044. Considering the petitioner's prior occupational history (40% in a supervisory capacity), the work he was able to perform subsequent to the injury (light millwright work and over 13 months continuous employment as a millwright foreman), and the post-injury wages received (substantially in excess of pre-injury earnings) we cannot say that the hearing officer was wrong in concluding that petitioner had not demonstrated a loss in his earning capacity. While we sympathize with petitioner's concern for a possible future inability to secure suitable employment, we point out that if such a situation does occur, he is not without a remedy under the Arizona workmen's compensation laws. He may petition to reopen his claim pursuant to A.R.S. § 23–1061 H. As stated by the Arizona Supreme Court in Maness v. Industrial Commission, *supra*:

> "Sometime in the future, if conditions which affect his earning power should change and result in a decrease in earning capacity due to the effect of the injury, then of course he could seek a reopening of his case for a new award." 102 Ariz. at 559, 434 P.2d at 645.

*See also* Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964).

In arriving at our decision we have considered the decision rendered by the Arizona Supreme Court in Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875 (1965). Petitioner places great reliance on that decision and characterizes it as on "all fours" with the instant case. While the fact situation in Shroyer is in many respects analogous to that in the instant case, because of material factual distinctions we are not persuaded that it requires the entry of a loss of earning capacity award here. In the Shroyer decision, it is pointed out that Shroyer's post-injury employment in a supervisory capacity was the result of a friend asking for him as a foreman. No comparable situation is present here. In Shroyer there is no evidence to indicate that a substantial portion of Shroyer's pre-injury work had been in a supervisory capacity, directly contrary to the pre-injury occupational history of the petitioner here. Also, Shroyer's post-injury supervisory work had covered only a five month period and was about to come to an end. Here petitioner's post-injury work as a foreman had covered in excess of 13 months. While these factual distinctions taken separately may not be impressive, taken together they present a materially different picture for the hearing officer's consideration. In Shroyer, the Arizona Supreme Court concluded that the hearing officer determined Shroyer's loss of earning capacity solely upon the basis of wages being earned by him at the time of the hearing. No such conclusion can be indulged in here —as previously mentioned, the hearing officer expressly considered in detail the factors enumerated in A.R.S. § 23–1044 D, and based upon that consideration entered his decision that petitioner had failed to show a loss in earning capacity. As is evident from prior decisions of this Court and the Arizona Supreme Court, the problem of determining the earning capacity of a disabled workman by its nature involves a certain amount of indefiniteness and poses a difficult task for the hearing officer. All that can be expected is that the hearing officer consider the statutory factors delineated in § 23–1044 D, together with any other factors made pertinent by the record in the particular fact situation involved, and render a decision arrived at after a reasoned consideration of these factors. Under the statutory scheme embodied in our workmen's compensation law, the hear-

ing officer has the obligation to determine the workman's loss of earning capacity, if any. If there is reasonable evidence to support his decision we cannot set it aside and substitute our view of the evidence.

The award is affirmed.

JACOBSON, C. J., and EUBANK, J., concur.