*489 P.2d 858*

**Ronald E. MATSON, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Rudolph's Chevrolet, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 467.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 21, 1971.

Rehearing Denied Dec. 2, 1971.

Review Denied Jan. 11, 1972.

Gorey & Ely, by Joseph M. Bettini and Sherman R. Bendalin, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund, by Courtney L. Varner, Phoenix, for respondent Employer and Carrier.

DONOFRIO, Judge.

This is a writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona that petitioner sustained *no loss of earning capacity.* The sole issue is whether in this respect the award is reasonably supported by the evidence.

On October 1, 1966, petitioner, age 26, suffered an industrial injury while work-

ing as an automobile mechanic for respondent employer. His claim was duly accepted for benefits and he received extensive medical treatment which included a back fusion and a laminectomy. On November 17, 1967, he was released to return to work with a 10% general physical impairment. His average monthly wage was set at $402.40. After working at other jobs he went to work as a painter for Matson Painting and Decorating Company which was owned by his father.

The facts of petitioner's earnings in his employment are undisputed. Regarding his work at the time of the formal hearing we find the facts substantially as summarized in the award, i. e., that on March 11, 1968, he started to work as a painter for his father at $2.50 an hour, which was increased to $3.50 an hour on May 20, 1968; that his monthly earnings since May 1, 1968, until March 3, 1969, have continued in excess of his average monthly wage of $402.40, averaging monthly for nine weeks in 1969 the sum of $477.40, based on an average of forty hours' work per week.

It is petitioner's contention that these wages were the result of a sympathetic employer, his father, and that although presumptive of commensurate earning capacity, they were not the wages that he could have earned in the open labor market.

■ There seems to be no dispute between the parties as to the law. Evidence of post-injury earnings raises a presumption of at least commensurate earning capacity, Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967); Laird v. Industrial Commission, 8 Ariz.App. 196, 445 P.2d 79 (1968), but such evidence is not necessarily conclusive or controlling, Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959); Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749 (1962), and our Supreme Court has stated in Shroyer v. Industrial Commission, 99 Ariz. 266, 408 P.2d 406 (1965), that the Commission may not base the earning capacity solely upon what a worker is receiv-

ing in his last employment when temporary.

Petitioner leans heavily on the following excerpt from a quotation from 2 Larson, Workmen's Compensation Law, § 57.34 (1952), cited in Allen:

"Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and, for purposes of determining permanent disability are to be discounted accordingly. * * *" 87 Ariz. at 65, 347 P.2d at 716

We are mindful of this principle of law and have had occasion to recently apply it with approval in Houser v. Industrial Commission, 15 Ariz.App. 504, 489 P.2d 878 (filed October 20, 1971).

■ Fully cognizant of petitioner's position, we have read the testimony with care. We are satisfied that the evidence can be reasonably interpreted to support the findings and award. It shows that although petitioner's wages with his father may have been earned in the face of pain, inconvenience and discomfort they were, nevertheless, reasonably worth at least the $2.50 an hour which was paid to petitioner.

The father employed petitioner as a painter in a competitive business, admitting there were many jobs petitioner could do, although he might have limitations for certain other work in his business. The jobs he could not do were those requiring such things as heavy lifting of paint cans and the moving around of furniture and heavy objects. The father, although testifying that his son would not be worth a journeyman's wage because of these handicaps, has never stated that petitioner was worth less than $2.50 an hour.

After working a while for his father, petitioner was paid $3.00 per hour, and on one job, $3.50 per hour. The father stated he paid this higher wage of $3.50 per hour because he had a good contract that enabled him to pay such a wage. Although the father testified that a painter with pe-

titioner's physical limitations would not command this pay of $3.50 per hour, it did not change the fact that petitioner's work was reasonably worth $2.50 per hour. The $2.50 per hour wage is all that is needed to support the finding of no loss of earning capacity.

Although petitioner's jobs for nearly two years showed earnings which were reasonably in excess of his average monthly wage, it is to be recognized that he may not have done as well had it not been for his father.

If, in the future, conditions which affect petitioner's earning capacity should change and result in a decrease in earning capacity due to the effects of his injury, then he can petition for reopening.

Affirmed.

STEVENS, P. J., and CASE, J., concur.